877 A.2d 1247

ARMANDO GONZALEZ AND MIRNA PADILLA GONZALEZ, PLAINTIFFS–APPELLANTS, v. IDEAL TILE IMPORTING CO., INC., JOHN DOE, AGENT OR EMPLOYEE, NAME BEING FICTITIOUS, KALMAR–AC OF COLUMBUS, INC., KALMAR–AC HANDLING SYSTEMS, INC., LIFT TRUCKS, INC., HENSON TRUCK & FORKLIFT SERVICE, ABC COMPANIES 6–10, NAMES BEING FICTITIOUS, JOHN DOES 2–5, NAMES BEING FICTITIOUS AND JOHN DOES 6–10, NAMES BEING FICTITIOUS, DEFENDANTS, AND KOMATSU FORKLIFT U.S.A., INC., DEFENDANT–RESPONDENT.

Argued May 2, 2005—Decided July 27, 2005.

416

*Michael D. Schottland* argued the cause for appellants (*Shottland, Manning, Caliendo & Thomson,* attorneys; *Mr. Schottland and Tennant D. MaGee,* on the briefs).

*William J. Ricci* argued the cause for respondent (*Lavin, O'Neil, Ricci, Cedrone & DiSipio,* attorneys).

PER CURIAM.

Plaintiff, Armando Gonzalez, was seriously injured when he was struck by a forklift operated by a co-worker. He sued the

forklift's first-stage manufacturer (defendant Komatsu), contending that it should have installed additional warning devices on the machine in order to make its operation safe.[1] Komatsu moved for summary judgment on the ground that state tort claims for workplace injuries are preempted when the allegedly defective product was manufactured in compliance with federal standards. The motion was granted.

Plaintiff appealed, contending that the relevant federal standard, the Occupational Safety and Health Act (OSHA), only applies to employers and not to manufacturers, thus rendering preemption inapplicable. In a reported opinion, a divided panel of the Appellate Division affirmed. *Gonzalez v. Ideal Tile Importing, Inc.*, 371 *N.J.Super.* 349, 853 *A.2d* 298 (App.Div.2004). In ruling, the court concluded that it did not need to determine OSHA's reach because both parties proceeded on the assumption that Komatsu was bound by OSHA's forklift standards. *Id.* at 360, 853 *A.2d* 298. Therefore, the majority assumed, without deciding, that OSHA's forklift regulations were binding on Komatsu and not just informative or evidential of the standard of care applicable to the manufacturer or seller. *Ibid.*

The majority next addressed whether plaintiff's state tort claim was preempted by federal law and concluded that the state regulation urged by plaintiff would stand "as an obstacle to the accomplishment and execution of" the federal regulation regarding additional warning devices, and thus determined that plaintiff's product liability theory was preempted as in conflict with the federal standard. *Id.* at 362, 853 *A.2d* 298.

One judge dissented. He disagreed with "the majority's understanding that plaintiffs accepted the premise that OSHA's standards govern product manufacturers because they failed to argue that OSHA applies only to employers." *Id.* at 371, 853 *A.2d* 298. Instead, he opined that plaintiffs' position on that issue was "clearly inferable" from their argument that OSHA does not

---

[1] Gonzalez's wife also sued *per quod.*

preempt third-party tort claims. *Ibid.* The dissenter went on to conclude that Komatsu's preemption argument was without merit because OSHA only applies to employers and not to manufacturers. *Ibid.* The case came to us as of right because of the dissent. We have carefully reviewed this record in light of the claims advanced by the parties regarding preemption and now affirm.

A few comments are in order, however. First, we agree with the dissenting judge that plaintiffs' position that OSHA regulations only apply to employers was clearly in the case from the beginning as an integral implication of the argument that OSHA does not preempt third-party tort claims. We also agree with his opinion to the extent that it can be read to hold that some third-party claims arising in the workplace may not be preempted by OSHA. We part company from him in connection with his blanket conclusion that OSHA can never preempt a third-party tort claim.

 Preemption may be express or implied and

is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. Absent explicit preemptive language, [the United States Supreme Court] has recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, and conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

[*Gade v. Nat'l Wastes Mgmt. Ass'n,* 505 *U.S.* 88, 98, 112 *S.Ct.* 2374, 2383, 120 *L.Ed.*2d 73, 84 (1992)(internal citations and quotations omitted).]

 Express preemption is determined from an examination of the explicit language used by Congress. *Jones v. Rath Packing Co.,* 430 *U.S.* 519, 525, 97 *S.Ct.* 1305, 1309, 51 *L.Ed.*2d 604, 613 (1977). In this case, the OSHA statute governs on the question of express preemption. OSHA contains a saving clause that provides:

Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

[29 *U.S.C.A.* § 653(b)(4).]

OSHA also contains a preemption clause that states that "[n]othing in this [Act] shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect." 29 *U.S.C.A.* § 667(a).

The United States Supreme Court has discussed the interplay between analogous saving and preemption clauses, concluding that the preemption clause should be read narrowly:

> Without the saving clause, a broad reading of the express pre-emption provision arguably might pre-empt those actions, for, as we have just mentioned, it is possible to read the pre-emption provision, standing alone, as applying to standards imposed in common-law tort actions, as well as standards contained in state legislation or regulations. And if so, it would pre-empt all nonidentical state standards established in tort actions covering the same aspect of performance as an applicable federal standard, even if the federal standard merely established a minimum standard. On that broad reading of the pre-emption clause little, if any, potential "liability at common law" would remain. And few, if any, state tort actions would remain for the saving clause to save. We have found no convincing indication that Congress wanted to pre-empt, not only state statutes and regulations, but also common-law tort actions, in such circumstances. Hence the broad reading cannot be correct. The language of the pre-emption provision permits a narrow reading that excludes common-law actions. Given the presence of the saving clause, we conclude that the pre-emption clause must be so read.

> [*Geier v. Am. Honda Motor Co.*, 529 *U.S.* 861, 868, 120 *S.Ct.* 1913, 1918, 146 *L.Ed.*2d 914, 923 (2000).]

By that reasoning, as the Appellate Division properly held, under OSHA, state tort actions are not expressly preempted.

■ We turn next to field preemption, which, as the United States Supreme Court has said, occurs "where the scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' " *Gade, supra*, 505 *U.S.* at 98, 112 *S.Ct.* at 2383, 120 *L.Ed.*2d at 84 (citation omitted). OSHA provides:

> Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated ... shall submit a State plan for the development of such standards and their enforcement.

[29 *U.S.C.A.* § 667(b).]

It further states:

Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title.

[29 *U.S.C.A.* § 667(a).]

Those provisions of OSHA clearly demonstrate the intent of Congress to allow states to have some role in maintaining safe and healthful working conditions. Thus, field preemption is inapplicable.

■ The remaining issue is whether conflict preemption applies and that is where we think the Appellate Division majority was directly on the mark. Conflict preemption occurs where "compliance with both federal and state regulations is a physical impossibility," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade, supra,* 505 *U.S.* at 98, 112 *S.Ct.* at 2383, 120 *L.Ed.*2d at 84 (citation omitted).

As the Appellate Division noted, ascertaining the interplay of conflict preemption and OSHA is made difficult by the fact that the Supreme Court was unable to reach a consensus on the issue in *Gade. Gonzalez, supra,* 371 *N.J.Super.* at 366, 853 *A.*2d 298. There, the Court addressed whether OSHA preempted an Illinois statute that required the licensing of hazardous waste equipment operators and laborers. *Gade, supra,* 505 *U.S.* at 91, 112 *S.Ct.* at 2379, 120 *L.Ed.*2d at 80. The majority of justices held that there was preemption, but did not agree on whether the preemption was express or implied. *Id.* at 102, 112 *S.Ct.* at 2385, 120 *L.Ed.*2d at 84. In the plurality opinion, Justice O'Connor, writing on behalf of herself and three other justices, held that a finding of federal preemption was required due to conflict preemption principles. *Id.* at 98, 112 *S.Ct.* at 2383, 120 *L.Ed.*2d at 84. Justice Kennedy concurred in the judgment but held that that preemption was express. Thus, while *Gade* established that Congress intended OSHA regulations to have a preemptive effect, it did not resolve

whether a state regulation that is only supplemental to federal regulations is preempted.

In *Geier, supra,* the Court answered the question in a different context. There, the Court addressed whether the federal regulation regarding automobile airbags preempted a state common law tort action in which the plaintiff claimed that the defendant auto manufacturer, who was in compliance with the federal standard, should nonetheless have equipped an automobile with airbags. *Geier, supra,* 529 *U.S.* at 864–65, 120 *S.Ct.* at 1916–17, 146 *L.Ed.*2d at 921. At issue was the question of conflict preemption. The Court detailed the history of the federal regulation of restraint systems in automobiles, noting that after weighing the advantages and disadvantages of various restraint systems, the Department of Transportation had adopted a regulation that set a performance requirement for passive restraint devices and allowed manufacturers to choose among different passive restraint mechanisms such as airbags and automatic seatbelts in order to satisfy that requirement. *Id.* at 877–78, 120 *S.Ct.* at 1923, 146 *L.Ed.*2d at 928–29.

The Court determined that the federal regulation "deliberately sought to gradually phase-in passive restraints," requiring the manufacturers to equip only 10% of their car fleet manufactured after a certain date with passive restraints, increasing the percentage in three annual stages until 100% of the new car fleet was so equipped. *Id.* at 879, 120 *S.Ct.* at 1924, 146 *L.Ed.*2d at 930. Thus, the Court concluded that:

> In effect, petitioners' tort action depends upon its claim that manufacturers had a duty to install an airbag when they manufactured the [automobile in question]. Such a state law—i.e., a rule of state tort law imposing such a duty—by its terms would have required manufacturers of all similar cars to install air bags rather than other passive restraint systems, such as automatic belts or passive interiors. It thereby would have presented an obstacle to the variety and mix of devices that the federal regulation sought ... Because the rule of law for which petitioners contend would have stood "as an obstacle to the accomplishment and execution of" the important means-related federal objectives that we have just discussed, it is preempted.

> [*Id.* at 881, 120 *S.Ct.* at 1923, 146 *L.Ed.*2d at 931–32 (citing *Hines v. Davidowitz,* 312 *U.S.* 52, 61 *S.Ct.* 399, 85 *L.Ed.* 581 (1941)).]

*Geier* provides a framework for analyzing whether there is conflict preemption in this case. We think the Appellate Division majority applied *Geier* correctly when it stated:

Upon examining the content of the ANSI standards, and their intended meaning, we conclude that plaintiff's product liability theory suggests a standard that is in direct conflict, and not merely supplemental, to the ANSI standards. Two ANSI standards demonstrate this conflict. The first requires that forklifts be equipped with an operator controlled horn, while the second declares that "other devices (visible and audible) suitable for the intended area of use may be installed when requested by the user." As can be seen, ANSI does not leave open an area where the States may regulate with regard to "other" warning devices. Instead, like the phased-in airbag regulation considered in *Geier*, ANSI specifically creates a standard for "other" warning devices, requiring the user to determine their need, dependent upon the "intended area of use."

ANSI's interpretation of these standards[2] demonstrates that OSHA requires that such additional warning devices should not be installed absent a contrary determination by the user:

[T]he user [should] consider certain factors to enhance a safe operation. He may use his own judgment or that of one with more experience. The myriad combinations related to lighting, ambient noise levels, traffic routes for both materials and personnel, floor conditions, proximity of machinery, equipment and work stations, etc., suggest that this would be a difficult subject to cover in a standard with finite verbiage. The support for using additional audio and/or visual alarms is that it may promote safety. The argument against indiscriminate use of additional alarms is that it might encourage the driver to ignore his responsibility of looking in the direction of travel and being alert to impending danger. Also, automatic continuous alarms can become so commonplace that they will soon be ignored by persons in the area. [ANSI/ASME B56.1–1983, Interpretation 1–6.]

As can be seen, the ANSI standards, do not merely set a mandatory minimum for forklift safety devices, but regulate the universe of warning devices, concluding that the inclusion of warning devises other than an operator-controlled horn, may tend to create more dangers than they prevent and, thus, should depend upon the conditions in which the forklift is used, as determined by the owner/user. Plaintiff urges application of a product liability standard regarding "other" warning devices that, by being more rigorous, attempts not to supplement, but to supplant, OSHA's more discretionary regulation. In short, the result of ANSI's expertise in this area—which OSHA co-opted—was its conclusion that the "other" warning devices, which plaintiff alleges were required to render the forklift safe, actually may tend

---

2 "ANSI's interpretation of its own standards is entitled to considerable deference. *Geier, supra,* 529 *U.S.* at 883, 120 *S.Ct.* at 1926, 146 *L.Ed.*2d at 933. By adopting ANSI's standards, we assume it was also the intent of the Secretary of Labor to have those standards mean the same thing which ANSI intended." *Gonzalez, supra,* 371 *N.J.Super.* at 369 n. 9, 853 *A.*2d 298.

to create additional dangers in the workplace. That *is* a standard not *the absence of* a standard, and the state regulation urged by plaintiff, through the imposition of tort liability, would stand "as an obstacle to the accomplishment and execution of" the federal regulation regarding additional warning devices. *Geier, supra,* 529 *U.S.* at 881, 120 *S.Ct.* at 1925, 146 *L.Ed.*2d at 932 (quoting *Hines v. Davidowitz,* 312 *U.S.* 52, 67, 61 *S.Ct.* 399, 404, 85 *L.Ed.* 581, 587 (1941)). Accordingly, we conclude that plaintiff's claim for damages based upon Komatsu's alleged failure to comply with a standard which conflicts with OSHA's standards was properly dismissed.

[*Gonzalez, supra,* 371 *N.J.Super.* at 369–70, 853 *A.*2d 298 (alteration in original).]

Those conclusions fully accord with relevant conflict preemption principles in all respects. Although a state tort action involving a third party and a work place injury could survive an OSHA conflict analysis, this one simply does not. The judgment of the Appellate Division is therefore affirmed substantially for the reasons expressed in Judge Fisher's thorough and thoughtful opinion.

Justice ZAZZALI dissenting.

I respectfully dissent from the majority's conclusion that regulations promulgated under the Occupational Safety and Health Act (Act), 29 *U.S.C.A.* §§ 651 to 678, preempt New Jersey products liability claims against a third-party forklift manufacturer. Instead, I would conclude that preemption is inapplicable in this appeal, and I would remand to allow plaintiffs to maintain their state law claims.

I.

Congress designed the Act to help guarantee that every American worker has "safe and healthful working conditions." 29 *U.S.C.A.* § 651(b). To advance that objective, Congress empowered the Secretary of Labor to establish workplace safety and health regulations, 29 *U.S.C.A.* § 655, and created the Occupational Safety and Health Administration (OSHA) to enforce them, 29 *U.S.C.A.* § 657. Because OSHA standards are wide-ranging and have the force of federal law, *see, e.g., Chrysler Corp. v. Brown,* 441 *U.S.* 281, 295, 99 *S.Ct.* 1705, 1714, 60 *L.Ed.*2d 208, 221 (1979), the vexing question that frequently arises is whether the regulations preempt state tort law.

Preemption principles are, at best, "difficult to apply," *Geier v. Am. Honda Motor Co.,* 529 *U.S.* 861, 868, 120 *S.Ct.* 1913, 1918, 146 *L.Ed.*2d 914, 923 (2000), and, at worst, "of a Delphic nature," *Int'l Ass'n of Machinists v. Gonzales,* 356 *U.S.* 617, 619, 78 *S.Ct.* 923, 924, 2 *L.Ed.*2d 1018, 1021 (1958). Furthermore, preemption "is not to be lightly presumed." *Turner v. First Union Nat'l Bank,* 162 *N.J.* 75, 88, 740 *A.*2d 1081 (1999) (quoting *Franklin Tower One, L.L.C. v. N.M.,* 157 *N.J.* 602, 615, 725 *A.*2d 1104 (1999)).

Here, the Court should not affirm the Appellate Division's finding of preemption for three reasons. First, by including a broad "saving clause," Congress intended any implied preemption of state tort claims by the Act to be extremely narrow. Second, state products liability law is generally applicable to all manufacturers and does not regulate employers and employees specifically. Third, imposing tort liability on a forklift manufacturer for defective design does not divest forklift users of their discretion to implement safety precautions, but rather encourages the exercise of that discretion with due care.

### A.

Any preemption analysis relative to OSHA regulations must begin with the Act's saving clause, which provides:

> Nothing in this chapter shall be construed to ... enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.
>
> [29 *U.S.C.A.* § 653(b)(4).]

No other statutory framework that the Supreme Court has considered "contains a saving clause more broad." *In re Welding Fume Prods. Liab. Litig.,* 364 *F.Supp.*2d 669, 687–88 (N.D.Ohio 2005) (observing that by selecting wording such as "affect in any other manner" and "injuries, diseases, or death," Congress "carefully preserved" personal injury claims); *see also Sprietsma v. Mercury Marine,* 537 *U.S.* 51, 63, 123 *S.Ct.* 518, 520, 154 *L.Ed.*2d 466, 478 (2002) ("[A saving clause] assumes that there are some significant number of common-law liability cases to save ...."

(citing *Geier, supra,* 529 *U.S.* at 868, 120 *S.Ct.* at 1918, 146 *L.Ed.*2d at 923)).

The majority opinion relies on the Supreme Court's decision in *Gade v. National Wastes Management Ass'n,* 505 *U.S.* 88, 112 *S.Ct.* 2374, 120 *L.Ed.*2d 73 (1992), for the proposition that "Congress intended for OSHA regulations to have a preemptive effect" in certain circumstances. *Ante* at 421, 877 *A.*2d at 1251. *Gade, supra,* however, is of limited value here because, in that case, a state legislature enacted a licensing requirement in an affirmative and direct attempt to regulate the training of hazardous waste workers. 505 *U.S.* at 93, 112 *S.Ct.* at 2380, 120 *L.Ed.*2d at 81. Stated differently, because the *Gade* licensing statute was "a positive enactment setting occupational standards," rather than a common law duty, the Act's "saving clause was virtually irrelevant to the Supreme Court's pre-emption analysis." *Welding Fume, supra,* 364 *F.Supp.*2d at 687.

In contrast, the saving clause preserves the state tort claims at issue here because the clause specifically refers to "common law ... rights, duties, or liabilities" regarding "injuries, diseases, or death of employees." 29 *U.S.C.A.* § 653(b)(4). In light of Congress's clear statement, we should find preemption "only when there is a conflict between state tort law and federal regulation that is *especially 'direct, clear and substantial.'*" *Welding Fume, supra,* 364 *F.Supp.*2d at 689 (emphasis added) (quoting *Gade, supra,* 505 *U.S.* at 107, 112 *S.Ct.* at 2387, 120 *L.Ed.*2d at 90); *see also York v. Union Carbide Corp.,* 586 *N.E.*2d 861, 866 (Ind.Ct. App.1992) (stating that because "state tort actions are expressly saved by the OSH Act," court would not even consider "whether such actions are impliedly preempted"). As explained more fully below, that high benchmark has not been reached in this appeal.

## B.

The Court should not give OSHA forklift regulations preemptive effect because New Jersey products liability law is "general[ly] applicab[le]" to any person or business that manufactures

and sells goods. *See Gade, supra*, 505 *U.S.* at 107, 112 *S.Ct.* at 2387, 120 *L.Ed.*2d at 90. In *Gade*, the Supreme Court recognized that

> state laws of *general applicability* (such as laws regarding traffic safety or fire safety) that do not conflict with OSHA standards and that regulate the conduct of workers and nonworkers alike would generally not be pre-empted. *Although some laws of general applicability may have a "direct and substantial" effect on worker safety, they cannot fairly be characterized as "occupational" standards, because they regulate workers simply as members of the general public.*
> [*Id.* at 107, 112 *S.Ct.* at 2387–88, 120 *L.Ed.*2d at 90 (emphasis added).]

Products liability law is generally applicable because it imposes a duty on manufacturers to act reasonably in designing, testing, and marketing their products, *see, e.g., Fabian v. Minster Mach. Co.,* 258 *N.J.Super.* 261, 273–74, 609 *A.*2d 487 (App.Div.1992), regardless of whether those products are ultimately used by employees in the workplace, *see Welding Fume, supra,* 364 *F.Supp.*2d at 686. Such generally applicable "private rights and remedies ... hardly qualify as standards" because they are "more *ex post [and] reactive* than prescriptive or normative." *Pedraza v. Shell Oil Co.,* 942 *F.*2d 48, 53 n. 5 (1st Cir.1991) (internal quotation marks omitted). Tort duties—which the Act explicitly indicates are unaffected by OSHA regulations—are established on a case-by-case, post hoc basis. Although the accretion of decisional precedent may have the potential to influence workplace behavior, such an effect does not set a standard or establish a regulation in the traditional sense. Accordingly, I would conclude that the OSHA forklift regulations do not preempt generally applicable state products liability law.

## C.

Finally, preemption is inappropriate because OSHA's forklift regulations simply provide the forklift "user" with a range of discretion to select safety devices. Requiring the user, and by implication the manufacturer, to act reasonably in exercising that discretion is not a "direct, clear and substantial" interference with the regulations. *Gade, supra,* 505 *U.S.* at 107, 112 *S.Ct.* at 2387, 120 *L.Ed.*2d at 90.

On this point, the majority relies heavily on *Geier, supra,* in which the Supreme Court held that products liability claims against auto manufacturers for failing to install airbags were preempted because "[s]uch a state law ... by its terms would have required manufacturers of all similar cars to install air bags rather than other passive restraint systems." 529 *U.S.* at 881, 120 *S.Ct.* at 1925, 146 *L.Ed.*2d at 932. However, *Geier* is distinguishable for two reasons.

First, the relevant saving clause in *Geier* was less specific than the saving clause in the Act. *See Welding Fume, supra,* 364 *F.Supp.*2d at 687 & n. 21. The *Geier* saving clause provided that " '[c]ompliance with' a federal [auto] safety standard 'does not exempt any person from any liability under common law.' " *Geier, supra,* 529 *U.S.* at 868, 120 *S.Ct.* at 1918, 146 *L.Ed.*2d at 923 (quoting 15 *U.S.C.* § 1397(k)) (first alteration in original). In contrast, as noted above, the Act's saving clause speaks in far broader terms than whether "compliance" affects "liability":

> Congress was careful to warn that its intention was *to leave common law duties and liabilities absolutely unchanged;* not only would the OSH Act neither "enlarge [n]or diminish" the common law, but—just in case there was some other way to modify tort law besides "enlarging or diminishing" it—Congress further stipulated that the OSH Act would not "affect [the common law] in any other manner." *It is difficult to imagine a more explicit statement of Congressional intention to preserve and not pre-empt state common law.*
>
> [*Welding Fume, supra,* 364 *F.Supp.*2d at 687–88 (emphasis added) (alteration in original) (quoting 29 *U.S.C.A.* § 653(b)(4)).]

Second, the regulation in *Geier* was of a different nature than the forklift regulations in this matter. The *Geier* airbag regulation "deliberately sought a gradual phase-in of passive restraints" and any interference by state law "would have presented an obstacle to the variety and mix of devices that the federal regulation sought." *Geier, supra,* 529 *U.S.* at 879, 881, 120 *S.Ct.* at 1924, 1925, 146 *L.Ed.*2d at 930, 932. Thus, the airbag regulation implemented the Department of Transportation's industry-wide determination of the suitable ambient level of passenger safeguards. That determination, however, was not based on an as-

sessment of the appropriate safety measures for each individual vehicle in light of particular road hazards.

OSHA's forklift regulations, on the other hand, provide the user with discretion to implement certain safety devices in order to protect against specific dangers present under various work conditions. A statement that accompanies the regulation explains that "the user [should] consider certain factors to enhance a safe operation. He may use his own judgment or that of one with more experience." *Gonzalez v. Ideal Tile Importing Co.,* 371 *N.J.Super.* 349, 369, 853 *A.2d* 298 (App.Div.2004) (alteration in original) (quoting ANSI/ABME B56.1–1983, Interpretation 1–6). However, the statement also reveals that the regulation is by necessity incomplete: "The myriad combinations related to lighting, ambient noise levels, traffic routes for both materials and personnel, floor conditions, proximity of machinery, equipment and work stations, etc., suggest that *this would be a difficult subject to cover in a standard with finite verbiage." Id.* at 370, 853 *A.2d* 298 (emphasis added) (quoting ANSI/ABME B56.1–1983, Interpretation 1–6). This intentional incompleteness, coupled with the Act's broad saving clause, suggests that general tort principles have a role to play in determining proper forklift safety precautions. *See also S.Rep. No. 91–1282* (1970), *reprinted in* 1970 *U.S.C.C.A.N.* 5177, 5186 (announcing that Act adheres to "principles of common law," that "individuals are obliged to refrain from action which cause harm to others," and that "employers shall furnish this degree of care").

For illustration, one conceivable alternative design that the forklift manufacturer might have considered would allow the user to easily install, remove, enable, or disable a variety of "other [safety] devices ... suitable for the intended" jobsite. *Gonzalez, supra,* 371 *N.J.Super.* at 369, 853 *A.2d* 298 (quoting OSHA forklift regulations). In that way, the user could retain control over which safety devices are in use at given time and could reasonably respond to work conditions as they arose. At the same time, the forklift manufacturer could produce an adaptable, and ultimately

safer, product. Guided by expert testimony, and taking into account the totality of the circumstances, a factfinder could decide whether the manufacturer's decision to forgo such a design was reasonable. Under the majority's holding, however, the regulations give the manufacturer unfettered and unreviewable discretion, a result that is contrary to traditional tort law principles and indifferent to employee safety.

## II.

To be sure, the Appellate Division sets forth a creative argument, which the majority adopts, in favor of preemption on these facts. The dilemma is that, however appealing its reasoning may seem, the court's thesis rests on distinguishable precedent, runs counter to the plain language of the Act, and conflicts with Congress's intent to allow common law actions to proceed except in the clearest cases.

Accordingly, I respectfully dissent and would reverse the Appellate Division's finding of preemption.

*For affirmance*—Chief Justice PORITZ, Justices LONG, LaVECCHIA, ALBIN, WALLACE and RIVERA-SOTO—6.

*For reversal*—Justice ZAZZALI—1.