**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1107-15T3

BC COMPLIANCE GROUP, LLC,

       Plaintiff-Respondent,

v.

ROSEN SEYMOUR SHAPSS MARTIN
& COMPANY, LLP,

       Defendant-Appellant.

_____

Argued January 24, 2017 — Decided October 3, 2017

Before Judges Messano and Guadagno.

On appeal from the Superior Court of New
Jersey, Law Division, Monmouth County,
Docket No. L-2675-13.

James J. Curry, Jr., argued the cause for
appellant (The Law Offices of James J.
Curry, Jr., LLM, attorneys; Mr. Curry and
Timothy J. Petrin, on the briefs).

Jerome F. Gallagher, Jr., argued the cause
for respondent (Norris, McLaughlin & Marcus,
PA, attorneys; Mr. Gallagher, of counsel and
on the brief; Bradford W. Muller, on the
brief).

PER CURIAM

Following a three-day trial, a jury returned a verdict in favor of plaintiff BC Compliance Group, LLC (BCCG), against defendant Rosen Seymour Shapss Martin & Company, LLP, (RSSM) in the amount of $182,238.77. RSSM now appeals, not from the final judgment, but from an order entered on February 6, 2015, denying its motion for summary judgment and from an order entered on April 24, 2015, denying reconsideration of the earlier order.

In 2006, RSSM, a certified public accounting firm, retained BCCG, a consulting firm specializing in contract compliance, to examine RSSM's real estate lease expenses to identify and eliminate overcharges in its leased facilities. Pursuant to a "Real Estate Accounting Agreement," RSSM agreed to compensate BCCG with fifty percent of all benefits recovered.

In July 2007, BCCG completed its audit which concluded that RSSM had overpaid $364,000 to its landlord, RFR Realty LLC (RFR). BCCG forwarded the analysis to RFR seeking an audit credit. In August 2007 and again in November 2007, RFR rejected BCCG's audit findings. In July 2008, RSSM and BCCG proposed a settlement of the audit credit to RFR but received no response.

In 2010, RSSM began negotiations with RFR to renew its lease and entered into a formal lease extension in June 2011. BCCG maintains that the lease extension includes $2.1 million in

2                                                                    A-1107-15T3

renovations to be paid by RFR; an eleven month rent abatement valued at $2.1 million; and a new base year which resulted in annual savings of more than $100,000 in additional rent expenses. The lease extension also granted RFR a general release of all prior claims RSSM may have against RFR.

In October 2011, BCCG advised RSSM that its audit findings had been utilized by RSSM to obtain benefits under the lease extension and demanded $182,238.77, which it calculated as half of the overcharges identified in its audit. RSSM refused to pay. In July 2013, BCCG filed a complaint in the Law Division Monmouth County seeking $182,238.77.

RSSM filed a motion for summary judgment seeking dismissal of BCCG's complaint. In support of its motion, RSSM submitted affidavits by Donald Leavy, RSSM's director of human resources, and Steven P. Morrows, a representative of RFR.

Morrows asserted that RFR and RSSM did not take into account the auditing work by BCCG in negotiations for the amended lease agreement. He claimed that the agreement was based on market conditions only and not the work conducted by BCCG.

Leavy asserted that after the initial meeting with RFR, it was clear to him that the "landlord was not going to voluntarily acquiesce in any escalation adjustment as a result of the audit

prepared by [BCCG]." Leavy also maintained that the issue as to lease adjustments was on hold and not pursued or mentioned during the lease amendment negotiations.

Plaintiff provided a certification from Edward Botti, co-managing member of BCCG, who was involved with the audit proceedings with defendant. Botti attached redacted RFR lease amendments that plaintiff had reviewed in other cases where it audited RFR leases, and none of those other leases contained general release provisions similar to those contained in defendant and RFR's amended lease.

Botti certified that RSSM never expressed any disagreement with BCCG's audit findings and provided emails from Leavy indicating RSSM wanted to pursue an action, but kept pushing the matter due to the lease negotiations. Leavy in his affidavit claimed RSSM did a cost-benefit's analysis and determined that "it would not make economic sense to pursue arbitration or litigation."

After hearing oral argument on February 6, 2015, Judge Katie A. Gummer denied RSSM's motion for summary judgment. After thoroughly reviewing the submissions of both parties, Judge Gummer found there was no dispute as to the existence of a contract, but there was an issue whether RSSM breached that

contract by failing to compensate BCCG pursuant to the terms of the contract:

> It's not in dispute that someone at least at the landlord's, in the landlord's group, someone at the landlords was aware of the audit. I understand that was three years before, I understand all of the testimony that's before the Court that any negotiations specifically about the audit had been rejected.
>
> But a reasonable fact finder could conclude that the existence of that audit and the alleged overcharges were well within the mind of the person who ultimately signed the lease on behalf of the landlord. And I think that's enough to put the issue before the jury.
>
> I think that's a genuine issue of material fact that, although a person who is the lead negotiator may not have known about it, may not have argued about it, the landlord could well, the person who ultimately made the decision to sign the lease could have concluded that, could have taken into consideration the information provided in that audit.

RSSM than moved for reconsideration based on an affidavit by Aby Rosen, co-founder of RFR who signed the 2011 lease amendment. Rosen certified that he was not aware of BCCG's audit or RSSM's claim for overcharges when he signed the lease. RSSM argued that Rosen's affidavit proved that it did not receive any benefit from RFR as a result of BCCG's audit.

On April 24, 2015, Judge Gummer denied the motion for reconsideration finding that genuine issues of material fact remained that a reasonable fact finder could resolve in favor of BCCG. The judge found that the jury should determine "whether or not those beneficial results . . . in the new lease came from anything that plaintiff did or were wholly unrelated to anything that plaintiff did . . . to determine credibility issues on that front."

The judge also rejected RSSM's argument that the lack of expert testimony required dismissal, concluding that BCCG did not need an expert because "under the language of the agreement there is effectively a presumption or a recognition that the benefits came as a direct result of BCCG's efforts and that there's no dispute as to the amount of benefits at issue here."

The matter proceeded to trial before another judge and a jury returned a verdict in favor of BCCG on October 14, 2015.

On appeal, RSSM argues its motion for summary judgment should have been granted, as no evidence established that RSSM received a benefit from RFR as a result of BCCG's audit; the motion judge failed to make rulings on evidential objections raised by RSSM; and the judge relied on inadmissible and irrelevant evidence in denying RSSM's motions.

A-1107-15T3

"[A] denial of summary judgment is always interlocutory[.]" Hart v. City of Jersey City, 308 N.J. Super. 487, 498 (App. Div. 1998). "[A]n order denying summary judgment . . . decides nothing and merely reserves issues for future disposition." Gonzalez v. Ideal Tile Importing Co., Inc., 371 N.J. Super. 349, 356 (App. Div. 2004) aff'd, 184 N.J. 415 (2005), cert. denied, 546 U.S. 1092, 126 S. Ct. 1042, 163 L. Ed. 2d 857 (2006).

An interlocutory order is preserved for appeal with the final judgment or final agency decision if it is identified as a subject of the appeal. In re Carton, 48 N.J. 9, 15 (1966). That may be done in the notice of appeal or the case information statement. Synnex Corp. v. ADT Sec. Servs. Inc., 394 N.J. Super. 577, 588 (App. Div. 2007) (permitting consideration of order granting partial summary judgment identified in case information statement); Sikes v. Twp. of Rockaway, 269 N.J. Super. 463, 465-66 (App. Div.) (declining to review trial ruling not identified in notice of appeal), aff'd o.b., 138 N.J. 41 (1994). However, where there is no appeal from a final judgment, a court lacks jurisdiction and may dismiss the appeal.

As we raise this jurisdictional issue sua sponte without prior notice to plaintiff or an opportunity to respond, we consider the merits of RSSM's claim that summary judgment should have been granted. See N.J. Office of Emp. Relations v. Commc'n

Workers of Am., 154 N.J. 98, 108 (1998) (a court that recognizes a jurisdictional defect should notify the parties and permit them to address the issue of the court's jurisdiction).

The undisputed facts of BCCG's audit, which discovered RSSM's overpayment to RFR; the favorable lease extension subsequently negotiated by RSSM and RFR; and the release of RFR from liability for prior claims by RSSM; raise a significant question of fact of whether RSSM secured benefits from RFR and was thus obligated to pay a fee to BCCG.

We are satisfied that Judge Gummer correctly denied RSSM's motion for summary judgment as her determination that there were genuine issues of material fact which could only be resolved by a jury finds ample support in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION