**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1269-19

IN THE MATTER OF THE
ALLEGED FAILURE OF ALTICE
USA, INC., TO COMPLY WITH
CERTAIN PROVISIONS OF THE
NEW JERSEY CABLE
TELEVISION ACT, N.J.S.A.
48:5A-1 ET SEQ., AND THE NEW
JERSEY ADMINISTRATIVE
CODE, N.J.A.C. 14:18-1.1 ET
SEQ.

_____

Argued September 20, 2021 – Decided October 15, 2021

Before Judges Sabatino and Mayer.

On appeal from the New Jersey Board of Public Utilities, Docket No. CS18121288.

Matthew S. Hellman (Jenner & Block, LLP) of the District of Columbia bar, admitted pro hac vice, argued the cause for appellant (Schenck, Price, Smith & King, LLP, attorneys; Jeffrey T. LaRosa, Howard J. Symons, and Matthew S. Hellman, on the briefs).

Alec Schierenbeck, Deputy State Solicitor, argued the cause for respondent New Jersey Board of Public Utilities (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney

General, of counsel; Meliha Arnautovic and Paul Youchak, Deputy Attorneys General, on the brief).

Maria T. Novas-Ruiz, Assistant Deputy Rate Counsel, argued the cause for respondent New Jersey Division of Rate Counsel (Stefanie A. Brand, Director, attorney; Maria T. Novas-Ruiz, on the brief).

PER CURIAM

Appellant Altice USA, Inc. (Altice) appeals from a November 13, 2019 final agency decision issued by respondent New Jersey Board of Public Utilities (BPU). Because we find the billing method under N.J.A.C. 14:18-3.8, requiring prorated billing for cable service, preempted by the Federal Cable Communications Policy Act of 1984 (Cable Act), 47 U.S.C. §§ 521 to -573, we reverse.

The following facts are undisputed. In May 2011, Altice's predecessor, Cablevision, filed a petition with the BPU requesting relief from the "method of billing" under N.J.A.C. 14:18-3.8. Cablevision contended "[f]orbearance from the rule would enable Cablevision to meet its customers' billing needs by allowing it to construct tailored billing arrangements and payment plans," while remaining competitive with other cable service providers. In September 2011, the BPU issued a Rule Relief Order (2011 Rule Relief Order) permitting

Cablevision to prorate its bills provided such billing "would not harm consumers."

In 2015, Altice sought to merge with Cablevision. The BPU approved the merger on May 26, 2016. As part of the merger approval, Altice agreed to "abide by applicable customer service standards, performance standards, and service metrics as delineated under N.J.A.C. Title 14, including, but not limited to Chapters 3, 10, and 18, and N.J.S.A. 48:5A, including, but not limited to requirements related to billing practices and termination." Altice "assert[ed] that there [we]re currently no concrete plans to change rates, terms, or service conditions or operations of the systems which [may] develop in response to the market and regulatory developments, including changes with respect to finances, operations, accounting, rates, depreciation, operating schedule, maintenance and management, affecting the public interest."

Following the merger, Altice implemented a "whole-month billing policy" for its cable service operations across twenty-one states, including New Jersey. Under the whole-month billing policy, Altice customers paid for cable service, in advance, on a monthly basis. Altice did not issue a refund if a customer opted to cancel service prior to the end of the month already billed and paid.

Altice notified its customers that prorated billing would cease as of October 31, 2016. The BPU received more than one-hundred complaints from dissatisfied customers in response to Altice's billing change. In March 2017, the BPU advised Altice its billing practice was non-compliant with N.J.A.C. 14:18-3.8.

On December 18, 2018, the BPU issued an order to show cause requiring Altice explain why its failure to prorate customer bills should not immediately cease. Altice responded the BPU's 2011 Rule Relief Order granted "'flexibility' to meet . . . competitive challenges[.]" Because Altice's competitors eliminated prorated billing, Altice argued it required flexibility to do the same.

In November 2019, the BPU issued a cease-and-desist order to Altice. The order required Altice to resume prorating bills for customers terminating service prior to the end of a billing month and issue refunds to all affected customers. The BPU claimed Altice's elimination of prorated billing violated the 2011 Rule Relief Order and the conditions of the 2016 merger approval.

Two weeks later, Altice requested the BPU stay the cease-and-desist order, which the BPU denied. Around the same time, Altice filed suit in the United States District Court for the District of New Jersey, challenging the BPU's order. Federal District Court Judge Brian R. Martinotti issued a

A-1269-19

preliminary injunction against the BPU's enforcement of its cease-and-desist order. Altice subsequently moved for judgment on the pleadings, which Judge Martinotti granted in a March 23, 2021 order and written decision. Judge Martinotti's disposition of the federal court case in favor of Altice is presently pending appeal before the United States Court of Appeals for the Third Circuit.

On January 7, 2020, Altice appealed the BPU's cease-and-desist order to this court. On appeal, Altice argues the following: the order violated State law; the order is arbitrary and capricious based on the BPU's misinterpretation of the 2011 Rule Relief Order; its whole-month billing practice does not violate the 2016 merger approval; the order exceeds the BPU's authority; the Cable Act preempts rate regulation by the State; and order is rate regulation, not a consumer protection measure or customer service requirement as claimed by the BPU.

We first address the preemption issue. Altice argues before this court, as it did before Judge Martinotti, the BPU's cease-and-desist order is preempted because the BPU is not permitted to regulate rates under the Cable Act. According to Altice, the BPU's order regulated the rates charged to Altice's customers by declining to allow whole-month billing and requiring proration of rates on a daily basis when a customer terminates cable service prior to the end

of the month. Altice explains its service is sold to customers at a bulk monthly rate and the BPU's mandate improperly converts its whole-month billing structure into a daily rate for the provision of cable services to consumers. Altice further contends the BPU's edict is neither a "consumer protection measure" nor a "customer service requirement" and, therefore, is preempted.

The BPU counters "requiring service providers to follow the rules and to enforce regulations that protect the public interest and ensure customers are not harmed by anticompetitive [c]ompany practices does not rise to the level of rate regulation under the law." Because Altice discontinued prorating bills, the BPU claims cable consumers suffered financial harm. The BPU also asserts it has authority to enforce consumer protection measures under the Cable Act and, therefore, federal preemption did not apply.

We review issues of federal preemption de novo. In re Reglan Litig., 226 N.J. 315, 327 (2016). "The doctrine of federal preemption finds its source in the Supremacy Clause of the United States Constitution." Id. at 328. "The party claiming preemption bears the burden of supporting that claim by 'clear and manifest evidence.'" Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 615 (1999) (quoting Pa. Med. Soc'y v. Marconis, 942 F.2d 842, 853 (3d Cir. 1991)).

A-1269-19

When considering issues of preemption, the overriding principle "is whether Congress intended to preempt state law and power." Vill. of Ridgefield Park v. N.Y., Susquehanna & W. Ry. Corp., 318 N.J. Super. 385, 396 (1999) (citing Medtronic, Inc. v. Lohr, 518 U.S. 470, 494 (1996)). "Congress' intent is 'primarily discerned from the language of the pre-emption statute and the statutory framework surrounding it.'" Id. at 396-97 (quoting Medtronic, Inc., 518 U.S. at 486). Absent specific legislative intent to the contrary, a statute's plain meaning should be considered, and if clear and unambiguous, the ordinary meaning must be accepted. Id. at 397.

"Preemption may be either express or implied." In re Reglan Lit., 226 N.J. at 328 (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992)). "Express preemption is determined from an examination of the explicit language used by Congress." Gonzales v. Ideal Tile Importing Co., 184 N.J. 415, 419 (2005) (citing Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977)). Preemption may be implied "where the federal legislation is so comprehensive that it creates the inference that Congress intended to leave no room for state regulation in the area." Franklin Tower One, L.L.C., 157 N.J. at 615.

We begin by analyzing whether the federal Cable Act preempts New Jersey's billing regulations under N.J.A.C. 14:18-3.8. The Cable Act seeks to

"establish guidelines for the exercise of Federal, State and local authority with respect to the regulation of cable systems . . . ." 47 U.S.C. § 521(3). In balancing the relationship between federal and state legislation, the Cable Act provides "[a]ny franchising authority[1] may not regulate the services, facilities, and equipment provided by a cable operator except to the extent consistent with" the Act. Id. § 544(a). "If the [Federal Communication] Commission finds that a cable system is subject to effective competition, the rates for the provision of cable service by such system shall not be subject to regulation by the Commission or by a State or franchising authority." Id. at § 543(a)(2). The Cable Act also provides, "any provision of law of any [s]tate, . . . which is inconsistent with this chapter shall be deemed to be preempted and superseded." Id. at § 556(c). However, the Cable Act permits states to enact and enforce consumer protection laws not specifically preempted. Id. at § 552(d)(1).

In a January 22, 2020 written opinion, Judge Martinotti addressed preemption under the Cable Act in a matter involving the same parties in this appeal. He issued a preliminary injunction against the BPU, finding "the Cable Act prohibits states from regulating 'the rates from the provision of cable

---

[1] The parties agree the New Jersey agency with franchising authority is the BPU. See 47 U.S.C. § 541(b)(1).

service,'" and "[a] requirement that service providers prorate bills is a type of rate regulation." Altice USA, Inc. v. N.J. Bd. of Pub. Utils., No. 19-cv-21371, 2020 WL 359398, at \*8 (D.N.J. Jan. 22, 2020). In concluding "[a] requirement that service providers prorate bills is a type of rate regulation," Judge Martinotti relied on a federal court decision, Windstream Neb., Inc. v. Neb. Pub. Serv. Comm'n, No. CI-10-2399, 2011 WL 13359491, at \*6 (D. Neb. June 9, 2011) (holding a Nebraska law requiring a telecommunication common carrier to prorate customer charges upon initiation or termination of service constituted rate regulation prohibited by the Cable Act).

After concluding the BPU's cease-and-desist order constituted rate regulation, Judge Martinotti then examined whether Altice was "subject to effective competition." He explained "[i]n a series of orders between 2002 and 2010, the FCC found that Cablevision was subject to effective competition[,]" and "[i]n 2015, the FCC 'adopt[ed] a rebuttable presumption that [all] cable operators are subject to Competing Provider Effective Competition." Ibid. (first citing ECF No. 17-1, at 2 n.2) (second citing In re Amend. to Comm'n's Rules Concerning Effective Competition, 30 FCC Rcd. 6574, 6577 (June 3, 2015)). Consequently, Judge Martinotti concluded Altice, as Cablevision's successor,

9

was engaged in effective competition and could not be subject to rate regulation under the Cable Act.  Ibid.

The BPU argues Judge Martinotti's reasoning was flawed because there is a presumption against preemption when considering a state's enforcement action.  It also claims its cease-and-desist order, enforcing N.J.A.C. 14:18-3.8, qualified as a consumer protection measure or customer service requirement pursuant to 47 U.S.C. § 552(d) and, therefore, was not preempted.

We reject these arguments for the reasons expressed by Judge Martinotti in an opinion in a related case, Altice USA, Inc. v. Fiordaliso, No. 19-cv-21371, 2021 WL 1138152 (D.N.J. March 23, 2021).  First, Judge Martinotti found the "language of the Cable Act [wa]s clear enough to overcome t[he] presumption" favoring preemption.  Fiordaliso, 2021 WL 1138152, at *4.  Relying on Spectrum Northeast LLC v. Frey, 496 F.Supp.3d 507, 510 (D. Me. 2020), Judge Martinotti explained "[t]hough BPU's order and N.J.A.C. 14:18-3.8(c) only restrict Altice's billing for 'the month in which a subscriber cancels her cable service, its prohibition on charges for service that was not provided have the effect of prescribing a daily rate for the service that was provided before the cancellation.'" Id. at *4.  Thus, Judge Martinotti determined the BPU's alteration of Altice's whole-month billing practice to a per diem billing methodology

constituted rate regulation and was preempted by the clear and unambiguous language of the Cable Act.

Judge Martinotti also held the BPU's cease-and-desist order was not a "state customer service requirement."  Id. at *5.  He found "customer service" included "requirements governing (1) cable system office hours and telephone availability; (2) installations, outages, and service calls; and (3) communications between the cable operator and the subscriber" and did not include governance of "the availability or structure of refunds."  Id. at *6 (quoting Spectrum Northeast LLC, 496 F.Supp.3d at 515-16).  Because "[t]he overarching purposes of the Cable Act [are] to 'establish a national policy concerning cable communications' and to 'establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems[,]'" Judge Martinotti determined the BPU's order could not be considered a "customer service requirement."  Ibid. (quoting Spectrum Northeast LLC, 496 F.Supp.3d at 516).  According to Judge Martinotti, to conclude otherwise would allow states to circumvent the Cable Act by claiming "consumer protection," potentially lead to incongruous state regulations, and undermine the purpose of the Cable Act.  Ibid. (quoting Spectrum Northeast LLC, 496 F.Supp.3d at 516). The Cable Act only authorizes states to enact "any consumer protection law, to

the extent not specifically preempted by this subchapter." 47 U.S.C. § 552(d)(1). It is clear from the language in the Cable Act, Congress specifically preempted rate regulation for cable service providers. Id. at §543(a)(1).

While federal district court decisions are not "binding" on this court, such decisions may be considered persuasive. See Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 79-80 (1990). Having reviewed Judge Martinotti's decisions in the matters pending before him, we are persuaded his thorough and detailed legal analysis applies to the matter pending before this court. Judge Martinotti reviewed the same facts and issues and determined preemption applied. After considering the judge's cogent reasoning and the lack of New Jersey case law compelling an opposite outcome, we adopt the reasoning articulated by Judge Martinotti, finding the Cable Act expressly preempted N.J.A.C. 14:18-3.8(c). Because we agree the Cable Act preempts N.J.A.C. 14:18-3.8, we need not address Altice's other arguments. Therefore, the BPU's 2019 cease-and-desist order is invalidated.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1269-19