## Fick Will.

Argued May 25, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*H. Ober Hess,* with him *Benjamin R. Neilson, Carl F. Mogel,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellant.

*Donald F. Spang,* with him *R. Joseph Merkel,* and *Merkel, Spang & Martin,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, June 30, 1965:

Daniel *J.* Fick, testatrix's son, who was the residuary legatee of testatrix's original lawyer-drawn will dated January 28, 1957, appeals from the Decree of the Orphans' Court which involved the interpretation of a holographic paper written by his mother, Hattie L. Fick. The appellant contends this holographic paper dated April 25 or May 22, 1963, was a will which, by implication, revoked his mother's will of 1957.* Whether this 1963 holographic paper was a will, or a codicil, or merely a letter of directions to her attorney to draw a new will for her, is the principal question involved in this case. For undisclosed reasons, only a "copy fair" of the holographic paper was probated or printed.

In the field of wills, the most difficult problem is the determination of whether a holographic paper is a will, or a codicil, or neither, and if a will or codicil, the interpretation of such a writing. Mrs. Fick's holographic paper presents an unusually difficult problem. Some of its terms are uncertain and some are ambiguous or equivocal, some are confusing, some are inex-

---

* Mrs. Fick also left the following paper dated March 4, 1961:

"Blandon, Pa.

Mar 4 1961

The Paper in the safe posid Box in Bank Mary Young tear it up 5 Hundred Dollars Give it to my Sister Lulu Weisner to Help to clean House   Hattie L Fick"

plicable and some appear to be merely incoherent ramblings. It was addressed to her lawyer, Joe Merkle. It was dated April 25, 1963 and it was signed by Hattie L. Fick, May 22, 1963.*

Translating Mrs. Fick's paper into intelligible and clear language, we believe this is what the paper said:

"Joe Merkle, please draw my will to provide for the following:

I give my sister, Lulu E. Weisner, $1,000 for helping me clean house. Nancy Fick Delp Phyllis M. Fick Waghonast shall have only $1.00 apiece because Phyllis was not at my house for 14 years and Nancy was there about four times. I give my son all my residuary estate for his life with power of consumption, and what is unconsumed I give to my grandson, Daniel L. Fick. I give nothing to Mabe Nancy Phyllis who is left by my will, which is in my bank, $500. The paper which I left for Mary Young is no good and should be torn up. (We believe this refers to and was intended to revoke the $500 she gave Mary Young in the paper in her safe deposit box in the bank.) I give Kenneth Fick $1.00. My son shall continue to be trustee of the money I left those grandchildren because he is already trustee for them under my lawyer-drawn will."

Did Hattie L. Fick intend this holographic paper to be her will, or a codicil, or merely a direction to her attorney, Joe Merkle, to redraw her will and make the changes above mentioned? If the latter, it would not be a will or codicil, and non constat Mrs. Fick would have signed it if it had been redrawn. The devises and legacies given in Mrs. Fick's lawyer-drawn will of January 28, 1957 and the legacies given in her holographic paper of April 25 or May 22, 1963, were quite different.

---

\* After her signature appeared the following:

"my Brother Bill had the rams Rea shall give it to my son Daniel Fick"

The lower Court did not definitely decide whether the holographic paper of 1963 was a will or a codicil,* but did say that, if testamentary, it was a codicil which was ambiguous and equivocal and subject to several interpretations, and was not a complete disposition of all of testatrix's property.

If a testator intends to make a testamentary gift, it can be done in many ways and in many forms, and the intent, as we have often said, is the polestar. Papers—holographic and otherwise—have been sustained as wills where a testamentary disposition of property was clearly contained in a letter or a deed or a certificate of deposit or a power of attorney or an agreement or a check or a note or an assignment, and even in a letter of instructions to an attorney where it was later proved that the writer intended such letter to be a will: *Thompson Will,* 375 Pa. 193, 100 A. 2d 69; *Sciutti Estate,* 371 Pa. 536, 92 A. 2d 188; *Kauffman Will,* 365 Pa. 555, 76 A. 2d 414; *Gray Will,* 365 Pa. 411, 76 A. 2d 169; *Sando Will,* 362 Pa. 1, 66 A. 2d 312; *Wenz's Estate,* 345 Pa. 393, 29 A. 2d 13; *Glass' Estate,* 331 Pa. 561, 1 A. 2d 239; *Smith's Estate,* 308 Pa. 265, 162 Atl. 214; *Bingaman's Estate,* 281 Pa. 497, 127 Atl. 73; *Kimmel's Estate,* 278 Pa. 435, 123 Atl. 405; *Davis's Estate,* 275 Pa. 126, 118 Atl. 645; *Coulter v. Shelmadine,* 204 Pa. 120, 53 Atl. 638; *Harrison's Estate,* 196 Pa. 576, 46 Atl. 888; *Scott's Estate,* 147 Pa. 89, 23 Atl. 212; *Knox's Estate,* 131 Pa. 220, 18 Atl. 1021; *Fosselman v. Elder,* 98 Pa. 159; *Turner v. Scott,* 51 Pa. 126; *Rose v. Quick,* 30 Pa. 225. While these cases have gone very far to support a finding or interpretation that a testamentary gift was intended, they all go on the premise that the

---

* It did decide, for reasons not here pertinent, that in neither event was the executor entitled to the possession of the real estate of the testatrix which had been devised to one of her grandchildren and a daughter-in-law in her will of 1957.

356

decedent clearly evidenced an intent to make a testamentary gift.

It is extremely doubtful whether Hattie L. Fick intended this 1963 paper to be her will or codicil, or indeed whether it was signed at the end thereof as required by Section 2 of the Wills Act of 1947, P. L. 89, 20 PS §180.2. We believe this ambiguous paper was merely a direction to her lawyer, Joe Merkle, to draw up as best he could from this obscure and rambling paper, a new will.

Decree affirmed, each party to pay own costs.