## Stasis Will.

Argued April 26, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Rodney D. Henry,* for appellant.

*Richard J. Molish,* with him *Weiss, Nelson & Moskowitz,* for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, July 2, 1973:
This appeal presents a very narrow issue: whether the signature of Angelia Stasis found on a testamentary

document purporting to be her will satisfies Section 2502 of the Probate Estates and Fiduciaries Code,[1] which requires that every will admitted to probate "be signed by the testator at the end thereof."

Angelia Stasis died on October 28, 1966. On that day a search for a will was made and a sealed envelope was found in her safe deposit box which bore the words "Ciemano will" (Lithuanian for "This is my will") written in the decedent's hand. A single sheet of lined paper containing the testamentary writing in question was inside the envelope. In due course the document, which was also written in Lithuanian in the decedent's handwriting, was translated and offered for probate. The Bucks County Register of Wills refused to probate the document and the proponents of the will appealed to the Orphans' Court. The Orphans' Court affirmed the decision of the Register of Wills and dismissed exceptions to that ruling filed by the proponents; this appeal followed. We reverse the decree of the Orphans' Court.

There can be no question that the decedent intended the document which the Register of Wills refused to probate to serve as her will. The single sheet of paper which was found in the envelope begins: "Angelia Stasis this is my will and to whom I leave my money to my relatives." The document continues with an enumeration of the decedent's assets with instructions for their distribution to named relatives and friends upon the death of the testatrix. These instructions for the distribution of the testatrix's assets take up the entire front side of the document; there is writing on every line and there are no margins. The testamentary writing continues on the reverse side of the paper where there is a charitable bequest, a provision for funeral

---

[1] Act of July 1, 1972, 20 Pa. S. §2502, formerly Section 2 of the Wills Act of 1947, Act of April 24, 1947, P. L. 89, §2, 20 P.S. §180.2.

expenses, burial instructions, the appointment of executors and the disinheritance of several named relatives. On the *last line* of the reverse side of the page is the statement: "Be so good and fulfill my wishes." There is no signature at the *bottom* of the reverse side of the page. However, there is a signature on the page—it is upside down in the margin at the top of the page. In addition to the signature of the decedent, her address and the statement "This was written 1963 October 11 day" also appear upside down in the margin at the top of the reverse side of the sheet. The only question presented for our consideration is whether, under the circumstances presented in this will, the signature so placed qualifies as a signature "at the end thereof" as required by the Probate Estates and Fiduciaries Code.

The proponents of the will, appellants in this action, argue that while the signature on this document is admittedly not placed at the physical end of the writing, it is placed at the sequential end. The proponents contend that the sequence is both logical and obvious: after writing "Be so good and fulfill my wishes" on the last line of the reverse side of the sheet, the testatrix had no room for her signature; she then rotated the sheet 180 degrees and signed the document in the only available space left on the page—in the upper margin. The document was then dated and the will was complete.

The appellees do not seriously question the sequence of events advanced by the proponents of the will to explain the positioning of the decedent's signature. Their position, which was sustained by the lower court, is that neither the manner in which the will was signed nor the intention of the decedent when she signed it is material, since the placement of the signature does not conform with the provisions of the Wills Act. Neither

the statute nor our prior decisional law requires us to take such a narrow position.

The requirement that all wills be signed "at the end thereof" was first introduced into our law by the Wills Act of 1833[2] and has been restated in every subsequent enactment.[3] Prior to the Act of 1833 any testamentary document which could be shown to have been *executed* by the testator could be admitted to probate as a will. This practice led to certain abuses which the Act of 1833 attempted to correct by requiring the testator's signature at the end of the document. The evils which fostered the creation of the signature requirement were summarized by Justice STRONG in *Heise v. Heise*, 31 Pa. 246, 248-49 (1858) : "Nor should we lose sight of the mischiefs which existed at the time when it [the Act of 1833] was enacted; mischiefs which it was designed to remedy. Among these, none was more serious than the facility with which unfinished papers, mere inchoate expressions of intention, were admitted to probate as valid wills of decedents. Letters, memoranda, mere notes unsigned, which were entirely consistent with a half formed purpose, and which may have been thrown aside, and never intended to be operative, were rescued from their abandonment, proven as wills, and allowed to prevail as dispositions of property which there was much reason to believe the decedent never intended. It was to remedy this mischief that the Act of 1833 provided, that every will should be signed at the 'end thereof'."[4]

Although our decisions have been adamant that nothing written after a signature ending a testamentary

---

[2] Act of April 8, 1833, P. L. 249, §6.

[3] Act of June 7, 1917, P. L. 403, §2; Act of April 24, 1947, §2; Act of July 1, 1972, 20 Pa. S. §2502.

[4] *See also Hays v. Harden*, 6 Pa. 409 (1847).

document may be admitted to probate,[5] this Court has also recognized that in certain circumstances both reason and justice require careful scrutiny of the document in question to determine precisely where the "end" of it is. In several instances we have ruled that the end of the document does not necessarily mean the spatial end or the point which is farthest from the beginning. The end which is contemplated by the statute is the sequential end—the logical end of the language used by the decedent to express his testamentary purpose.[6]

In *Morrow's Estate (No. 1)*, 204 Pa. 479, 54 A. 313 (1903), a holographic will which had all its dispositive provisions on one side of a single page and the attestation and signature of the testator on the other side of the page was offered for probate. The will was admitted to probate, even though there was room for the signature at the bottom of the front side of the sheet. On appeal we affirmed the admission of the document to probate, adopting the opinion of the lower court which stated: "Who that writes or reads a letter does not involuntarily turn over a leaf after leaf seeking the continuation until he comes to the signature? How many are there who from force of habit, or prudence, or economy, or necessity, have written wills on both sides of a leaf of foolscap, and how many titles have passed, without a thought of invalidity? After all it is the common understanding and practice which must determine questions of this kind. There have been hundreds of wills written in circumstances of necessity beyond professional aid, and in which the application of technical

---

[5] *See, e.g., Weiss Estate*, 444 Pa. 126, 279 A. 2d 189 (1971); *Glace Will*, 413 Pa. 91, 196 A. 2d 297 (1964); *Coyne Will*, 349 Pa. 331, 37 A. 2d 509 (1944).

[6] *Coyne Will*, 349 Pa. 331, 37 A. 2d 509 (1944); *Maginn's Estate*, 278 Pa. 89, 122 A. 264 (1923).

rules would produce hardships not to be endured." *Id.* at 481, 54 A. at 314.

A testamentary document which was similar, although not identical, to the writing in the present case was presented to this Court in *Swire's Estate,* 225 Pa. 188, 73 A. 1110 (1909). In *Swire's Estate* the testatrix's will consisted of twelve numbered paragraphs arranged on one side of a single sheet of paper. Paragraphs one through eight were written in the normal fashion across the page, while paragraphs nine through twelve were written vertically in the left-hand margin. The testatrix's signature followed the eighth paragraph and was located in the bottom right corner of the page. Speaking through Mr. Chief Justice MITCHELL, the Court stated: "The statute requires that a will shall be in writing, and signed by the testator 'at the end thereof.' The end meant by this provision is the logical end of the language used, which shows that the testamentary purpose has been fully expressed. The position of the signature with regard to the bottom or end of the page is only evidence on the question whether the testator has completed the expression of his intention. Prima facie that is the natural place for the signature to be placed to show the full expression of the testator's wishes and therefore is presumptively the right place for it, but it is only evidence and must give way to evidence of a different intent." *Id.* at 191, 73 A. at 1110. After a review of earlier cases the Court concluded: "In the present case the connected sense of the text is entirely clear, though it does not follow the usual order of arrangement. But it does not deviate from it more than many letters written in the style of the present day where the writing jumps from the first to the third page and then back to the second. The full substance of the testatrix's intent and its expression are there, and the signature is at what she intended and

regarded as the end of her will. Where that is manifest the continuity of sense and not the mere position on the page must determine the statutory 'end thereof' as the place for the signature." *Id.* at 192, 73 A. at 1111.

Since 1833 our Wills Act has required every document which purports to pass property as a will to be "signed at the end thereof." However, to avoid extreme injustice, our decisional law has also recognized that in certain limited circumstances the document must be closely examined to determine exactly where the "end" of the document is. In the present case it is clear that after the testatrix wrote "Be so good and fulfill my wishes" at the bottom of the second side of the sheet she intended to serve as her will, she had no room left to sign her name. Rather than use another sheet of paper for her signature, she simply rotated the page 180 degrees and signed the document in the only remaining space available on the page—in the upper margin. Although the testatrix's signature is not at the spatial end of the document—the point farthest from the beginning—there is no question that within the context of this will the signature is at the sequential end. So placed, this signature fulfills all the functions it is required to perform: it provides authentication for the instrument setting forth the testamentary wishes of the testatrix; it identifies the testatrix; and it provides certainty as to her completed testamentary purpose.

Decree reversed. Costs to be paid by the estate.