570 A.2d 1058

**In re ESTATE OF Edna A. HOPKINS.**

**Appeal of MID–STATE BANK AND TRUST COMPANY, Administrator of the Estate of Ward W. Hopkins.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1989.

Filed Feb. 13, 1990.

Petition for Allowance of Appeal Denied July 2, 1990.

Stephen D. Wicks, Hollidaysburg, for appellant.

Ralph T. Forr, Jr., Altoona, for Hopkins, appellee and for Greiner and Krywokulski, participating parties.

John F. Sullivan, Altoona, for Bishop Guilfoyle High School, participating party.

Vernon R. Byrd, Jr., Philadelphia, for Mid–State Bank, participating party.

Before DEL SOLE, KELLY and HESTER, JJ.

HESTER, Judge:

The issue presented in this appeal is whether an undated document was admitted correctly to probate as a last will and testament. We conclude that since the document fails to dispose of any of decedent's assests and since the document was not signed at the end, it was admitted incorrectly to probate. Accordingly, we reverse.

On December 16, 1987, the Register of Wills of Blair County admitted a handwritten document to probate as the last will and testament of Edna A. Hopkins, deceased. The document, which is written on lined notepad paper, states as follows:

[Page one]

|  |  |
|---|---|
| Executors | Father Kenneth Greiner and Logi Krywokulski |

Masses to be said by Father Greiner

Money to Guilfoyle H.S.[1]
    Amt undecided

Lawyer—Atty. Foor

I give devise & bequeath to:
        Father Greiner
        Mr. & Mrs. Krywokulski
        Bishop Guilfoyle H.S.

If I should pre-decease my husband Ward, I make provision for his care in the following manner

Call Sheedy, M.D. and make appt for my physical examination to be declared competent and transfer my care from Haduck to Sheedy.

[Page two]

I want it understood that Atty. Gibboney is no longer in charge of my affairs, and Atty. Thomas Foor has agreed to represent me as of 1st of yr. 1987.

---

1. Evidence at the hearing established that decedent attended Guilfoyle High School.

[Page three]

    List all assets
        Govt. Bonds
            ″    Notes
        CXS
        Dreyfus
    Home 2410–14 Ave. to be sold and the land
    Personal property:
        Insurance
        Clothing
        Jewelry
        Other Valuables

[Page four]

    In conclusion
        all the rest residue and remainder of my estate both personal and real and wherever situated I give and bequeath
    Clothing to Salvation Army

The document is four pages long, and each page is signed vertically along the margin of the page. On December 14, 1988, Mid–State Bank and Trust Company, as administrator of the estate of William W. Hopkins, filed an appeal from probate to the orphans' court. William Hopkins was decedent's widower, and he died on November 21, 1987, within a month of his wife. He was the sole intestate heir of decedent.

The petition sur appeal alleges, among other things, that the document was not a will. Following a hearing held on April 4, 1989, the orphans' court sustained the register's decree of probate determining, *inter alia,* that the writing is in such form as to constitute a will. Following denial of its exceptions to the decree sustaining probate, Mid–State filed this timely appeal.

■ The first issue presented returns us to the basic definition of a will. It always has been the rule of law in this Commonwealth that no special form of words is necessary to constitute a will. *See, e.g., Turner v. Scott,* 51 Pa. 126 (1867); *Rose v. Quick,* 30 Pa. 225 (1858); *Clingan v. Mitcheltree,* 31 Pa. 25 (1857). However, there is one essen-

tial element, which is that the document dispose of property.

Instructive is the case of *Mannarelli Estate*, 436 Pa. 141, 259 A.2d 169 (1969), where the court sustained the orphans' court's refusal to probate a letter as a will. The court ruled that the document was not a testamentary disposition because the subject matter of the bequest was not known, although the beneficiary was stated. The court noted that "[w]here a writing by its terms clearly does not constitute a testamentary *disposition*," testamentary *intent* is not relevant. *Id.*, 436 Pa. at 142, 259 A.2d at 170 (emphasis added); *see also Sciutti's Estate*, 371 Pa. 536, 92 A.2d 188 (1952) (where letter contained no dispositive provisions, even though it pertained to matters to be considered following scrivner's death, letter was not a will).

More recently, the supreme court sustained an orphans' court refusal to probate a document that clearly was a set of instructions to the decedent's attorney regarding proposed changes to her will. *Estate of Moore*, 443 Pa. 477, 277 A.2d 825 (1971). The set of instructions examined in *Moore* was significantly more specific as to the proposed beneficiaries and the subject matter to be distributed than the mishmash of notes that we examine here. *See also Estate of Ritchie*, 480 Pa. 57, 389 A.2d 83 (1978), where the supreme court found that a document was not a will since it was not dispositive in nature where the document listed decedent's two daughters as executors, then listed his property and stated that the assets shall be divided fifty/fifty. The court noted that the writing was a set of instructions for use in drafting a will and did not contain a testamentary disposition. Once again, the set of instructions at issue in *Ritchie* at least could be interpreted so as to match the beneficiaries and the subject matter of the bequest.

Instantly, reviewing each line of the note, the following is stated. Decedent placed the word "executors" next to two names. There is no appointment language. Next, she gives directions regarding a funeral matter. Then, she "gives" money to a beneficiary, but expressly states that

the amount is undecided. Her attorney's name appears next. The name is followed by clear language that she wants to give three beneficiaries something, but she fails to indicate what they are to receive. She then turns to a discussion of her husband, stating that she wants to provide for him in the following manner; yet, she fails to state any manner. Instead, she writes a note to herself to call a doctor regarding a determination of her competency. Next, she notes a change in her preference of attorneys. The following page of the document contains a list of her property, but no beneficiaries. On the next page, the decedent sets forth a residuary bequest, but then fails to name the beneficiaries of that bequest. The only item that could be considered remotely dispositive is her direction of her clothing to a charity.

Thus, although it is clear that the document was testamentary in that it related to disposition of the decedent's assets following her death, the flaw is that it does not dispose of her property. The document fails to indicate the subject matter of the bequests to her four stated beneficiaries, *i.e.*, her husband, her priest, her friends, and her high school. The estate would be impossible to administer and distribute under this document. A court would be unable to determine who should get what assets. The decedent clearly intended to benefit her husband if he survived her, which he did. How much is his estate to receive? No one would have a basis for determining the amount of the bequest.

There was testimony at the hearing that decedent's intent when she drafted this document was to leave her residuary estate, in equal shares, to her priest, her friends, and her high school. However, the testimony is contradicted directly by the language in the document and, therefore, is inadmissible to alter it. Decedent wrote that she had not decided on an amount to leave her high school. This is not a residuary bequest. In addition, she states clearly that she intends to benefit her husband. All this is irreconcilable with the testimony that decedent intended to leave her

entire estate, in equal shares, to those three beneficiaries. Accordingly, the testimony cannot be considered in order to convert the document into a dispositive scheme capable of interpretation. *See, e.g., Estate of Logan,* 489 Pa. 29, 413 A.2d 681 (1980), citing *Kauffman's Estate,* 365 Pa. 555, 76 A.2d 414 (1950) (extrinsic evidence regarding interpretation of document as testamentary is permitted only where document is ambiguous).

We observe that the fact that decedent's husband died soon after her is irrelevant. The language pertaining to her husband and the absence of a bequest to him leads to the irrefutable conclusion that this document was not intended as a will. It is a set of inchoate thoughts on possible beneficiaries and possible bequests. This conclusion is confirmed by the use of "list all assets," instead of "list of my assets," which indicates that decedent was writing a note to herself to list her assets and not listing her assets in order to write a bequest.

Finally, there was evidence that decedent had two booklets in her possession relating to wills. Those booklets were admitted into evidence, and they contain language showing how to correctly draft a general bequest, specific bequest, and residuary bequest. Accordingly, decedent had language to review if she had wanted to draft a will properly. In fact, the document that she drafted appears to have been in response to directions contained in one of those booklets, which states to draft a will, you must list your property, name your heirs, choose an executor, and *consult a lawyer to have it drafted.* In conclusion, the evidence establishes that decedent had not decided how to dispose of her assets at the time she wrote the document.

■ Appellant's alternative argument is that assuming the document is a will, it was admitted incorrectly to probate since it was not signed at the "end" as required by 20 Pa.C.S. § 2502 (every will shall be written and be signed by the testator "at the end thereof"). The case of *Estate of Weiss,* 444 Pa. 126, 279 A.2d 189 (1971), is dispositive of the

issue presented.[2]   In *Weiss,* the supreme court ruled that a will that was signed vertically along the left margin was not signed at the end.   The court specifically ruled that a signature written along the margin was not at the sequential or logical end of the instrument stating, "[T]o hold that a testamentary writing which is signed on the side or margin thereof is valid would ignore and violate the mandatory, statutory requirement that all wills be signed 'at the end thereof.' "   *Id.,* 444 Pa. at 131, 279 A.2d at 192 (footnote omitted).   Furthermore, decedent had sufficient room at the bottom of each page to sign her name horizontally, or at the logical end of each page.[3]   *Compare Estate of Stasis,* 452 Pa. 425, 307 A.2d 241 (1973).   Thus, the natural place for her to place her signature to show the finality of the expression of her wishes was to sign at the bottom of one of the pages, not along the margins, and therefore the margins can not be considered the logical or sequential end of this document.

Ironically, the requirement that a will be signed at the end was enacted in order to prevent the probate of unfinished papers and mere inchoate expressions of intent.   *Id.* By signing at the end of a document, the scrivner has expressed that he has decided on a testamentary scheme and that the writing is not half-formed thoughts never intended to be operative.   *Id.*   Thus, the placement of decedent's signature cements our analysis of the first issue herein.

The orphans' court committed an error of law in sustaining the decree admitting the document to probate.   Accordingly, we reverse.

---

**2.**   Appellee relies upon the case of *Estate of Proley,* 492 Pa. 57, 422 A.2d 136 (1980), in support of the position that the signature appears at the "logical" end of the document.   *Proley* is the product of an evenly divided court and is of no precedential value.

**3.**   It impossible to determine the precise order of the note pad pages since the document is not logical internally, and each page could be placed in any order with the same effect.