Mark **ARNOLDY** and Lynn Arnoldy,
h/w, Appellants

v.

**FORKLIFT L.P.,** f/k/a Clark Material
Handling Company, and Industrial
Material Handling Systems, INC., Ap-
pellees.

Superior Court of Pennsylvania.

Argued Feb. 14, 2007.

Filed May 22, 2007.

Reargument Denied Aug. 1, 2007.

Jonathan J. Bart, Philadelphia, for appellants.

Anthony S. McCaskey, Newark, NJ, for Indus. Material, appellee.

Joseph H. Foster, Philadelphia, for Forklift, appellee.

BEFORE: LALLY–GREEN, GANTMAN and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellants Mark Arnoldy and Lynn Arnoldy appeal from the judgments entered on July 14, 2006, in the Court of Common Pleas, Philadelphia County, in fa-

vor of Appellee Forklift L.P. f/k/a Clark Material Handling Company (Forklift), pursuant to the trial court's order granting its motion for summary judgment and in favor of Appellee Industrial Material Handling Systems, Inc. (IMH), pursuant to the trial court's order granting its cross-motion for summary judgment. Upon review, we affirm the judgments entered on July 14, 2006.

¶ 2 The trial court aptly stated the facts and procedural history as follows:

[Appellants] commenced this suit against [Appellees] by filing a Complaint September 1, 2003. The Complaint sounds in negligence and products liability against [Appellees] for defective design and distribution of a forklift.[fn1]

---

[fn1] [Appellee] Forklift manufactured the forklift, and [Appellee] IMH leased it to [Appellant Husband's] employer.

---

The accident occurred July 9, 2002. [Appellant Husband] was struck while standing behind a forklift his co-worker was operating in reverse. [Appellants] allege the forklift was unreasonably dangerous because it had only minimum safety devices and lacked any warning system when it was moving in reverse.[fn2]

---

[fn2] [Appellant Husband] claims the forklift lacked an audible backup alarm system, rearview mirrors, any form of beacon or strobe lighting, or any other safety device that would adequately protect individuals from injury caused by the forklift moving in reverse.

---

[Appellee] Forklift filed a motion for summary judgment March 29, 2006 arguing [Appellants] claims are preempted by Federal law. [Appellee] IMH filed a cross-motion for summary judgment

April 27, 2006 largely reproducing [Appellee] Forklift's argument. Although [Appellee] IMH's motion was filed three weeks late[, the trial court] elected to rule on the merits. [Appellants] answered both motions [on] May 5, 2006. [The trial court] granted summary judgment immediately following oral argument [on] July 14, 2006. [Appellants] moved to reconsider [on] July 27, 2006, [Appellee] Forklift answered [on] August 4, 2006[,] and [the trial court] denied [on] August 11, 2006. This appeal followed [on] August 11, 2006.

Trial court opinion, 9/11/06, at 1–2.

 ¶ 3 The trial court ordered Appellants to file a Rule 1925(b) statement of matters complained of on appeal; they complied.[1] In response, the trial court authored a Rule 1925(a) opinion addressing Appellants' matters complained of on appeal.

¶ 4 Appellants present five questions for our review:

1. Whether the trial court erred in granting summary judgment in favor of [Appellees] based on its conclusion that the occupational safety and health administration ("OSHA") regulations pertaining to forklifts

preempt state tort law under the doctrine of conflicts preemption.

2. Whether the trial court erred in granting summary judgment in favor of all [Appellees] on the grounds that OSHA regulations not only are admissible in a strict liability case, but are conclusive notwithstanding the long established law of this Commonwealth that OSHA regulations, ANSI standards or other evidence of industry custom and practice is inadmissible because the reasonableness of the actions of the manufacturer is not at issue in a strict liability case.

3. Whether the trial court erred in granting summary judgment in reliance on the New Jersey Supreme Court case of *Gonzalez v. Ideal Tile Importing Company, Inc.*, 184 N.J. 415, 877 A.2d 1247 (2005) without any analysis of either the facts of that case or the differences of the laws of New Jersey and Pennsylvania with respect to the admissibility of OSHA regulations in a products liability case.

4. Whether the trial court erred in implicitly overruling *Sheehan v. Cincinnati Shaper Company*, 382 Pa.Super. 579, 555 A.2d 1352 (1989) and other cases holding that OSHA

---

**1.** Although Appellants filed a timely Rule 1925(b) statement, we note that they have failed to comply with the requirements set forth in the Pennsylvania Rules of Appellate Procedure. Appellants' Rule 1925(b) statement includes thirteen issues and encompasses four pages. The Rule 1925(b) statement must be detailed enough so that the judge can write a Rule 1925(a) opinion, but not so lengthy that it does not meet the goal of narrowing down the issues previously raised to the few that are likely to be presented to the appellate court without giving the trial judge volumes to plow through. *Commonwealth v. Reeves*, 907 A.2d 1, 3 (Pa.Super.2006) (citation omitted). Further, we note that Appellants failed to include a copy

of their Rule 1925(b) statement in their appellate brief in violation of Pa.R.A.P. 2111(a)(10), (d). We remind counsel that this Court may quash an appeal pursuant to Rule of Appellate Procedure 2101 if defects in the brief or reproduced record are substantial. *Booher v. Olczak*, 797 A.2d 342, 344 (Pa.Super.2002) (citation omitted). In appropriate cases involving failure to comply with the Rules of Appellate Procedure, we will not hesitate to impose sanctions, including dismissing or quashing an appeal. *Id.*, 797 A.2d at 344. However, Appellants' violation of the rules in this case does not prevent this Court from determining the merits of the issues raised. Accordingly, we decline to quash this appeal.

standards are irrelevant to products liability cases against manufacturers.

5. Should this Court resolve the conflict between the common pleas court opinions in this case and in *Colville v. Crown Equipment Corp.* (C.C.P. Phila. Co., October Term, 1996 No. 0817), 2001 WL 35923655, (R.339a) aff'd, 785 A.2d 1023 (Pa.Super.2001). (R.506a), where Judge Manfredi, under similar facts, held that OSHA did not preempt state law products liability claims.

Appellants' brief, at 4.

¶ 5 Our standard of review in an appeal from the grant of a summary judgment motion is as follows:

Our standard of review is the same as that of the trial court; we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law. Conversely, if a question of material fact is apparent, the court must defer the question for consideration of a jury and deny the motion for summary judgment.

The standard of review of a trial court's entry of summary judgment is well-established. We shall reverse a grant of summary judgment "only if the trial court has committed an error of law or abused its discretion." "Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration." "Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden." On appeal from a grant of summary judgment, "we must examine the record

in a light most favorable to the non-moving party."

*Fort Cherry Sch. Dist. v. Gedman,* 894 A.2d 135, 139 (Pa.Super.2006) (citations omitted).

¶ 6 Pa.R.C.P. 1035.2 is stated, in pertinent part, as follows:

**Rule 1035.2. Motion**

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

¶ 7 We address Appellants' first and second arguments together as they pertain to their claim that the trial court erred in granting Appellee Forklift's motion and Appellee IMH's cross-motion for summary judgment. Specifically, Appellants' argue that the grant of summary judgment was improper because the Occupational Safety and Health Administration (OSHA) regulations regarding forklifts do not preempt state tort law under the doctrine of conflicts preemption. Further, Appellants' contend that the OSHA regulations are inadmissible because the reasonableness of the actions of the manufacturer is not at issue in a strict liability case.

¶ 8 Appellants argue that the trial court erred in admitting into evidence certain OSHA regulations. Initially, we note that Appellants are correct in their assertion that consideration of industry standards in a strict liability case would constitute reversible error. *Leaphart v. Whiting Corp.*, 387 Pa.Super. 253, 564 A.2d 165, 171 (1989) (citation omitted). However, Appellants' original complaint contains both negligence and products liability claims. As this Court has stated previously, in a strict liability case in which negligence is also alleged, consideration of evidence of industry standards does not constitute reversible error. *Id.*, 564 A.2d at 171 (citation omitted). In fact, evidence of industry standards and regulations is generally relevant and admissible on the issue of negligence. *Birt v. Firstenergy Corp.*, 891 A.2d 1281, 1290 (Pa.Super.2006) (*citing Dallas v. F.M. Oxford, Inc.*, 381 Pa.Super. 89, 552 A.2d 1109 (1989) (explaining that evidence of customary practice within an industry is admissible in negligence cases), *appeal denied,* 522 Pa. 612, 563 A.2d 498 (1989)); *see also Brogley v. Chambersburg Engineering Co.*, 306 Pa.Super. 316, 452 A.2d 743, 746 (1982) (OSHA regulations are admissible as standard of care, the violation of which is evidence of negligence). Because we have determined that the trial court properly admitted the OSHA regulations into evidence, we must now determine if these regulations preempt state tort law.[2]

¶ 9 The principle of federal preemption of state law derives from the second clause of Article VI of the Constitution, the Supremacy Clause. *Werner v. Plater–Zyberk*, 799 A.2d 776, 787 (Pa.Super.2002) (citation omitted). Under the Supremacy Clause, federal law is "the supreme law of the land" and any conflicts between federal and state laws must be resolved in favor of federal law. *Id.*, 799 A.2d at 787 (*citing Burgstahler v. AcroMed Corp.*, 448 Pa.Super. 26, 670 A.2d 658, 663–64 (1995)).

The United States Supreme Court has recognized three ways in which federal law may preempt, and thereby displace, state law: (1) "express preemption," (2) "field preemption" (also termed "implied preemption"), and (3) "conflict preemption." Express preemption arises when there is an explicit statutory command that state law be displaced. Under the principles of field (or implied) preemption, state law may be displaced "if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." Finally, state law may be displaced under conflict preemption principles if the state law in question presents a conflict with federal law in one of two situations: (a) when it is physically impossible to comply with both the state and the federal law, or (b) when the state law stands as an obstacle to the accomplishment and

---

2. Appellants allude to the existence of OSHA's savings clause, 29 U.S.C. § 653(b)(4), on page sixteen of their brief. However, Appellants fail to develop any argument pertaining to the relevance of this clause under these circumstances. It is well settled that failure to develop argument properly in an appellate brief constitutes waiver. *Fanning v. Davne*, 795 A.2d 388, 393 (Pa.Super.2002) (citation omitted). Further, this issue was not raised in Appellants' Rule 1925(b) statement of matters complained of on appeal. As this Court has noted on numerous occasions, any issues not raised in a Rule 1925(b) statement will be deemed waived. *Forest Highlands Cmty. Ass'n v. Hammer*, 879 A.2d 223, 226 (Pa.Super.2005) (citation omitted). Even if this argument was not waived, we note that the savings clause does not bar the ordinary working of conflict preemption principles. *Geier v. American Honda Motor Co.*, 529 U.S. 861, 869, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000).

execution of the full purposes and objectives of Congress.

*Werner*, 799 A.2d at 787 (citations omitted).

¶ 10 State law and federal regulations on the same subject both may apply when state law is not in conflict with, and may be construed consistently with, federal law and regulations. *Werner*, 799 A.2d at 787 (citation omitted). Preemption is primarily a matter of congressional intent. *Id.*, 799 A.2d at 787 (citation omitted). State law is impliedly preempted only when it directly conflicts with federal law by constituting an obstacle to accomplishing and executing Congress' full purposes and objectives. *Id.*, 799 A.2d at 788.

It is also well established that federal law may impliedly preempt state law to the extent that the state law conflicts with a federal regulatory scheme. A federal regulation may have just as much preemptive effect as a federal statute. Moreover, common law liability also may create a conflict with federal law. "Enforcement of common law duties can have the same regulatory effect as an affirmative legislative enactment." Preemption is thus no less of an issue when common law requirements, rather than statutory mandates, are concerned. Nevertheless, both federal law and Pennsylvania law clearly hold that there is a presumption against preemption. The historic police powers of the states are not to be superseded by federal law unless that is the clear and manifest purpose of Congress. The presumption against preemption under the Supremacy Clause strongly applies whenever preemption would deny a party access to all judicial remedies.

*Werner*, 799 A.2d at 788 (citations omitted).

¶ 11 The United States Supreme Court, when describing conflict preemption, has spoken of preempting state law that "under the circumstances of the particular case . . . stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"— whether that "obstacle" goes by the name of "conflicting; contrary to; . . . repugnance; difference; irreconcilability; inconsistency; violation; curtailment; . . . interference," or the like. *Geier*, 529 U.S. at 873, 120 S.Ct. 1913 (citations omitted). The United States Supreme Court has not previously driven a legal wedge—only a terminological one—between "conflicts" that prevent or frustrate the accomplishment of a federal objective and "conflicts" that make it "impossible" for private parties to comply with both state and federal law. *Id.*, 529 U.S. at 873, 120 S.Ct. 1913. Rather, it has said that both forms of conflicting state law are "nullified" by the Supremacy Clause, and it has assumed that Congress would not want either kind of conflict. *Id.*, 529 U.S. at 873, 120 S.Ct. 1913 (citations omitted). The United States Supreme Court has thus refused to read general "saving" provisions to tolerate actual conflict both in cases involving impossibility and in "frustration-of-purpose" cases. *Id.*, 529 U.S. at 874, 120 S.Ct. 1913 (citations omitted).

¶ 12 Our Supreme Court in *Cellucci v. GMC*, 550 Pa. 407, 418, 706 A.2d 806, 811 (1998), was faced with a situation similar to the circumstances of this case in which plaintiffs argued against federal preemption of state common law tort claims by the National Traffic and Motor Vehicle Safety Act.[3] The plaintiffs argued that the state common law tort claims at issue did not impose any burden on the manufacturers which are additional to that of the

---

**3.** 49 U.S.C. §§ 30101 *et seq.*

Safety Act. *Id.*, at 416, 706 A.2d at 810. Specifically, plaintiffs, who were injured in motor vehicle crashes, claimed that defendants were negligent in failing to equip the vehicles with, *inter alia*, driver's side air bags.

¶ 13 Our Supreme Court held that common law liability will survive federal regulations which are promulgated pursuant to the Safety Act so long as the only basis under which the common law liability is claimed does not prevent a manufacturer from complying with the federal regulation in a manner of its choosing. *Cellucci*, at 416, 706 A.2d at 810 (citation omitted). To hold otherwise would place manufacturers "in a position where they could be subject to varying standards from state to state, which could not all be complied with simultaneously." *Id.*, at 418, 706 A.2d at 811 (citation omitted). Additionally, our Supreme Court stated that allowing a state common law standard that imposes liability on a manufacturer for choosing a federally-imposed option takes away that federally-imposed option from the manufacturer, which clearly goes against Congress' intent. *Id.*, at 418, 706 A.2d at 811. Further it determined that common law liability which arises from the failure of a manufacturer to install air bags or other passive restraint systems is in actual conflict with the federal law and regulations which allowed the manufacturers to choose among three options. *Id.*, at 418, 706 A.2d at 811. Accordingly, our Supreme Court held that the "no air bag" claims of Cellucci and the Muntzes were impliedly preempted. *Id.*, at 418, 706 A.2d at 811.

¶ 14 Neither party disputes that section 1910.178 of the OSHA Act applies to the forklift that injured Appellant Husband. This provision is stated, in pertinent part, as follows:

§ 1910.178 Powered industrial trucks.

(a) General requirements.

 (1) This section contains safety requirements relating to fire protection, design, maintenance, and use of fork trucks, tractors, platform lift trucks, motorized hand trucks, and other specialized industrial trucks powered by electric motors or internal combustion engines. This section does not apply to compressed air or nonflammable compressed gas-operated industrial trucks, nor to farm vehicles, nor to vehicles intended primarily for earth moving or over-the-road hauling.

 (2) All new powered industrial trucks acquired and used by an employer shall meet the design and construction requirements for powered industrial trucks established in the "American National Standard for Powered Industrial Trucks, Part II, ANSI B56.1–1969", which is incorporated by reference as specified in § 1910.6, except for vehicles intended primarily for earth moving or over-the-road hauling.

29 C.F.R. § 1910.178. Further, the ANSI standard that was incorporated by reference into the above section is stated, in pertinent part, as follows:

5.14 Warning Device

When operating conditions dictate, the user should request the manufacturer to equip the trucks or tractors with visual warning devices such as lights or blinkers. Where noise levels are high, combinations of these may be required to insure adequate warning.

ANSI B56.1–1969.

¶ 15 Our review of the above provisions reveals that OSHA requires forklifts to meet the standards set forth in

ANSI B56.1–1969 and not any of the subsequent revised versions of B56.1. Appellants argue that the 1993 version of the B56.1 standard is applicable to the forklift manufactured in 1997, and, accordingly, this OSHA provision does not apply because it incorporates only B56.1–1969. Appellants argue that the 1969 version discussing optional safety equipment does not include the phrase "when requested by the user," as the 1983 version does, and, therefore, that OSHA's intent in retaining the 1969 version was to prevent the "user" from being the sole decision maker in evaluating conditions and setting criteria for when other safety devices should be implemented on a particular forklift. *See* Appellants' brief, at 21. We disagree. The 1969 version of B56.1 also indicates that it is the user's responsibility to determine if additional safety devices are required. *See* ANSI B56.1–1969 (user should request manufacturer to equip trucks with visual warning devices). Despite the fact that the forklift was manufactured in 1997, OSHA requires that all new powered industrial trucks acquired and used by an employer shall meet the design and construction requirements for powered industrial trucks established in the "American National Standard for Powered Industrial Trucks, Part II, ANSI B56.1–1969." Accordingly, we find that ANSI B56.1–1969 is the standard applicable to the forklift at issue.

■■■ ¶ 16 Appellants' tort action is predicated on the claim that the manufacturer of the forklift failed to install additional safety devices. Such a state law, *i.e.*, a rule of state tort law imposing such a duty, would in effect require manufacturers of these forklifts to install additional safety devices on all forklifts regardless of the existence of the standard incorporated by OSHA that places the responsibility of the determination of situation specific safety devices on the user of the equipment. *Geier*, 529 U.S. at 881, 120 S.Ct. 1913. This is in direct conflict with the purpose behind the OSHA regulation, *i.e.*, to protect employees by allowing the end users of the product to determine which safety device would be the most effective in its particular situation. Further, this state tort law standard would impose liability on a manufacturer for complying with a federally-imposed option, *i.e.*, allowing the user to determine and request the appropriate safety device. Doing so would take away that federally-imposed option from the manufacturer, which clearly goes against Congress' intent and would place manufacturers "in a position where they could be subject to varying standards from state to state, which could not all be complied with simultaneously." *Cellucci*, at 418, 706 A.2d at 811. Under the circumstances of this particular case, this state tort law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," and, accordingly, we find it is preempted. *Geier*, 529 U.S. at 873, 120 S.Ct. 1913. Therefore, Appellants' first and second arguments fail.[4]

4. Appellants briefly state that if we determine that it is the "end user's" responsibility to decide which safety devices to install, then summary judgment should not be granted in favor of Appellee IMH because it leased the forklift to Appellants and, accordingly, it is considered the "end user." We are constrained to find waiver of this argument for Appellants' failure to include it in their Rule 1925(b) statement of matters complained of on appeal. *Forest Highlands Cmty. Ass'n,* 879 A.2d at 226 (any issues not raised in 1925(b) will be deemed waived).

However, even if we were not to find this argument waived, we would find it to be without merit. As noted at length above, the reasoning behind requiring the "end user" to dictate situation specific safety devices is that the end user is the one in the best position to determine which devices would be most effec-

¶ 17 Appellants' third and fourth arguments are that the trial court erred in relying on *Gonzalez v. Ideal Tile Importing Company, Inc.*, 184 N.J. 415, 877 A.2d 1247 (2005), in determining that a grant of summary judgment was proper and in implicitly overruling *Sheehan v. Cincinnati Shaper Company*, 382 Pa.Super. 579, 555 A.2d 1352 (1989), and other cases holding that OSHA standards are irrelevant to products liability cases against manufacturers.

¶ 18 Appellants argue that the trial court improperly relied upon *Gonzalez*, in determining that the OSHA savings clause does not block ordinary working of preemption principles because it is not a Pennsylvania decision. The trial court cites to *Gonzalez* within its opinion, stating that it is "factually on point." However, the trial court does not rely solely on the *Gonzalez* decision in support of its argument. The trial court also cites to *Geier*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000), a United States Supreme Court decision, which stands for the same proposition that the savings clause does not bar the ordinary working of conflict preemption principles. *Id.*, 529 U.S. at 869, 120 S.Ct. 1913. Accordingly, Appellants' third argument fails.

¶ 19 Further, Appellants' fourth argument that the trial court's opinion implicitly overruled *Sheehan*, is without merit. *Sheehan* states that the introduction of industry standards in a strict products liability case is impermissible because such evidence has the effect of introducing the reasonableness of the manufacturer's conduct into an action which focuses, for public policy reasons, upon the existence of a defect. *Id.*, 555 A.2d at 1355. Unlike *Sheehan*, Appellants in this case include a

claim of negligence in their original complaint. As this Court has stated previously, in a strict liability case in which negligence is also alleged, admission of evidence of industry standards does not constitute reversible error. *Leaphart*, 564 A.2d at 171 (citation omitted). Accordingly, the trial court properly considered evidence of industry standards under these circumstances. Therefore, Appellants' fourth argument fails.

¶ 20 Finally, Appellants argue that this Court should resolve the conflict between *Colville v. Crown Equipment Corp.*, 785 A.2d 1023 (Pa.Super.2001) (unpublished memorandum), and other court of common pleas decisions regarding whether OSHA preempts state law products liability claims. For several reasons, we discern no conflict between *Colville* and this case. First, as was noted by Appellants in their brief, *Colville* is a non-precedential decision that has a non-binding effect on this Court. Second, *Colville* dealt with a claim of strict liability. In contrast, Appellants in this case allege liability under the theories of strict liability and negligence. As noted earlier, in a strict liability case in which negligence is also alleged, consideration of evidence of industry standards does not constitute reversible error. *Id.*, 564 A.2d at 171.

¶ 21 Third, we find *Colville* to be factually and legally distinguishable from this case. This Court determined that the plaintiff's tort claims in *Colville* were not preempted by OSHA regulations. In *Colville*, plaintiffs attempted to argue that certain training standards mandated by OSHA, i.e., recommendations that operator protection means be designed to permit rapid exit in an emergency, insulated

---

tive under their particular circumstances. Here, Appellants' employer, not Appellee IMH, would be in the best position to deter-

mine the most appropriate safety devices specific to their individual working environment.

manufacturers against defendant's claim that the defective design of the forklift resulted in his injury. This Court determined that the OSHA regulations in *Colville* were not inconsistent with the defendant's claim that the product itself was defective, and, accordingly, the tort claims were not preempted. In this case, we have found that the OSHA regulation embodied in 29 C.F.R. § 1910.178, that incorporates by reference the ANSI B56.1–1969 standard, is inconsistent with Appellants' theory that the manufacturer of the forklift failed to install additional safety devices. Accordingly, Appellants' final argument fails.

¶ 22 Because we have determined that there are no genuine issues of any material fact, we find that the trial court properly granted summary judgment in favor of Appellees. *See* Pa.R.C.P. 1035.2. Therefore, we affirm the July 14, 2006 judgments entered in favor of Appellee Forklift pursuant to the trial court's order granting its motion for summary judgment and in favor of Appellee IMH pursuant to the trial court's order granting its cross-motion for summary judgment.

¶ 23 Judgments affirmed.