**In re ESTATE OF Norman F. SHELLY.**

**Appeal of Marcreek Farms, Michael J. Cook, Richard Swisher, and Stephen D. Brown.**

Superior Court of Pennsylvania.

Argued Feb. 27, 2008.

Filed June 2, 2008.

Thomas J. Finucane, Chambersburg, for appellant.

Karl L. Prior, King of Prussia, for Evans, appellee.

BEFORE: FORD ELLIOTT, P.J., DONOHUE, and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Marcreek Farms, Michael J. Cook, Richard Swisher, and Stephen D. Brown (Appellants) appeal from the orphans' court's February 12, 2007 grant of summary judgment in favor of Margaret P. Evans, Terry L. Shelly, Larry R. Shank, and Donna Oberholzer (collectively Four Heirs) and its denial of Appellants' motion for summary judgment. Upon review, we affirm.

¶ 2 The orphans' court aptly stated the factual and procedural history of this appeal as follows.

Norman F. Shelly ("Decedent") died on July 27, 1999. After Decedent's

death, Thomas Steiger Jr., Esquire, submitted a cardboard panel of a cigarette carton for probate on August 25, 1999, and the Register of Wills issued letters of administration c.t.a. naming Michael J. Cook, who is not related to Norman, as administrator of Norman's estate. The cardboard panel contains no witness attestations and is not notarized, an Oath of Non–Subscribing Witnesses executed by two persons who purported to know and recognize Decedent's signature is of record at Will Volume 163, page 283. The cigarette carton document names beneficiaries of Norman's estate [Appellants] and none of those named beneficiaries are heirs of Decedent.

Charles O. Shelly, an intestate heir, filed an appeal from the decree of probate on November 5, 1999. A petition for class action status was filed simultaneously, but was denied by [orphans' court] Order on February 10, 2000. On April 12, 2000, an Order was entered enjoining the distribution or sale of assets. On August 15, 2000, David C. Cleaver, Esquire, appealed the probate of the cigarette carton document on behalf of Paul Shelly, the second intestate heir to challenge the cigarette carton writing. On September 15, 2005, Charles O. Shelly and Paul Shelly discontinued their respective appeals from probate. A petition to strike the discontinuance of Charles O. Shelly was filed on November 2, 2005[,] by the would-be intestate heirs, Margaret P. Evans, Terry L. Shelly, Larry R. Shank, and Donna Oberholzer ("Four Heirs"). On January 9, 2006, [the orphans' court] reinstated the appeal of Charles O. Shelly and approved the discontinuance of Paul Shelly's appeal, with prejudice. The appeal of Charles O. Shelly was joined by the Four Heirs on May 31, 2006.

At this time, several motions for summary judgment have been filed. The Four Heirs have filed a Motion for Summary Judgment, as well as a Motion for Summary Judgment Declaring Partial Intestacy. The Four Heirs' Motion for Summary Judgment reduces the case to a single legal issue: whether the cigarette carton document bearing Decedent's handwriting is a will. The Four Heirs' Motion for Summary Judgment Declaring a Partial Intestacy seeks a declaration by [the orphans' court] that if the cigarette carton document is found to be a will, then a partial intestacy results, as not all assets are disposed of in the cigarette carton document, and the cigarette carton document contains no residuary clause. The beneficiaries named in the cigarette carton document have also filed a Motion for Summary Judgment or Partial Summary Judgment requesting that the cigarette carton document be declared [decedent's] valid Last Will and Testament, and the appeal of the Four Heirs dismissed. [Appellants] make an additional request that [the orphans' court] undertake an analysis of the available extrinsic evidence and enter a similar finding based on such analysis.

Orphans' court opinion, 2/12/07, at 1–2 (footnote omitted).

¶ 3 On February 12, 2007, the orphans' court granted the Four Heirs' motion for summary judgment and denied Appellants' motion requesting the same. Appellants filed a timely appeal on March 13, 2007. The orphans' court ordered Appellants to file a concise statement of matters complained of on appeal; they complied. In response, the orphans' court authored a Pa.R.A.P.1925(a) opinion addressing Appellants' matters complained of on appeal.

¶ 4 Appellants present three issues for our review.

1. Whether the disputed writing, labeled "FIRST AND LAST ONLY WILL" and signed by the [decedent], provides for a positive disposition of assets?

2. If a will is otherwise valid, does "D[RAFT] ?," written by the [decedent] on the disputed writing, inherently destroy the testamentary character of the document?

3. Whether an examination of the disputed writing shows, with reasonable certainty, testamentary intent so that it should be probated as a will, or, in the alternative, whether a real doubt or ambiguity exists so that the disputed writing might or might not be a will, depending upon circumstances, so that extrinsic evidence can be used in resolving the uncertain character of the paper?

Appellants' brief, at 4.[1]

¶ 5 An appeal from the grant of summary judgment is subject to the following scope of appellate review:

> [W]e are not bound by the [orphans'] court's conclusions of law, but may reach our own conclusions. In reviewing a grant of summary judgment, the appellate court may disturb the [orphans'] court's order only upon an error of law or an abuse of discretion. The scope of review is plenary and the appellate court applies the same standard for summary judgment as the [orphans'] court.

*Rohrer v. Pope*, 918 A.2d 122, 126 (Pa.Super.2007) (citation omitted).

¶ 6 Further, the standard of review of an orphans' court's entry of summary judgment is well established.

> We shall reverse a grant of summary judgment only if the [orphans'] court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the [orphans'] court after hearing and consideration. Where the discretion exercised by the [orphans'] court is challenged on appeal, the party bringing the challenge bears a heavy burden. On appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party.

*Arnoldy v. Forklift, L.P.*, 927 A.2d 257, 262 (Pa.Super.2007) (citation omitted).

¶ 7 Pennsylvania Rule of Civil Procedure 1035.2 is stated, in pertinent part, as follows:

**Rule 1035.2. Motion**

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

¶ 8 Initially, we note that in order to determine whether a particular writing constitutes a will, no formal words

1. We have reorganized Appellants' issues for ease of review.

are necessary, the form of the instrument is immaterial if its substance is testamentary. *In re Megary's Estate,* 206 Pa. 260, 265, 55 A. 963, 965 (1903). A gift or bequest after death is of the very essence of a will, and determines a writing, whatever its form, to be testamentary. *Id.,* at 265, 55 A. at 965. Therefore, our first inquiry is whether the cigarette carton provides for a positive disposition of assets.

¶ 9 Appellants' argue that a positive disposition of assets is evidenced by the writing labeled "FIRST AND LAST ONLY WILL" and signed and dated by the decedent. Specifically, Appellants argue that the orphans' court erred in finding the cigarette carton did not evidence testamentary intent due to the absence of a positive disposition of assets. Appellants' contend that the term "will" is a dispositive term and the fact that the decedent signed and dated the cigarette carton resulted in a determination that it was a will written with testamentary intent.

¶ 10 No rule regarding wills is more settled than the general rule that the testator's intent, if it is not unlawful, must prevail. *In re Estate of Conlin,* 388 Pa. 483, 488, 131 A.2d 117, 119 (1957) (citation and quotation marks omitted). Moreover, the testator's intention must be ascertained from the language and scheme of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but is *what is the meaning of his words. Id.,* at 488, 131 A.2d at 119 (citation and quotation marks omitted).

¶ 11 As found by the orphans' court, this document did not make a disposition of property. *See* Orphans' court opinion, 4/12/07, at 5. Rather the document contained a list of items accompanied by the names of individuals. The only term that could have been construed to dispose of property is "DEVIDE," which the orphans' court presumed to be "divide." *Id.,* at 8. The context of the placement of the word "DEVIDE" was as follows:

MONEY. DEVIDE

MICHAEL COOKS SONS

¶ 12 However, the decedent also placed an arrow leading from the previous section of the document which read: "FARM MACH + MACHINES AND TOOLS MICHAEL COOK SR LIVING MY AGE" into this section. Appellants contend that "DEVIDE" written in this context indicated that Michael Cook, Sr., was the father of the two sons and that the decedent intended the money to be divided equally between the two sons. We disagree.

¶ 13 There is no indication of what money was to be divided, into what shares it was to be divided, or if it was to be divisible by three including Michael Cook, Sr., or divisible by two including only his two sons. There was no specificity as to the proposed beneficiaries or to the subject matter to be distributed. Therefore, this was not a positive disposition of property nor can a positive disposition of property be inferred from the cigarette carton. Accordingly, because the cigarette carton does not include the one essential element for the creation of a will, a disposition of property, it cannot be considered as such. *In re Estate of Hopkins,* 391 Pa.Super. 211, 570 A.2d 1058, 1059 (1990) (citations omitted). As a result, we find no abuse of discretion by the orphans' court in its determination that the cigarette carton did not constitute a positive disposition of assets. *Arnoldy,* 927 A.2d at 262.

¶ 14 Appellants' next argument is that the writing on the cigarette carton evidenced the testamentary intent of the decedent. Specifically, Appellants' contend that the orphans' court erred in de-

termining the decedent lacked testamentary intent due to the insertion of the term "DRAFT ?" at the top of the cigarette carton. Appellants' set forth several contentions to support their argument. First, Appellants' argue that because the will was otherwise valid, the insertion of the term "DRAFT ?" did not destroy the presence of testamentary intent inherent in the writing. The term "DRAFT ?" was distinguished from the other writing on the cigarette carton in that it was set inside a box and was inserted into the heading of the writing, which appeared as follows:

FIRST AND LAST ONLY WILL

OF "DRAFT?"

NORMAN F SHELLY

■ ¶ 15 Our determination focuses on whether we are faced with a document that is testamentary as a matter of law, nontestamentary as a matter of law, or ambiguous, in which case extrinsic evidence is to be considered to resolve the ambiguity. *In re Estate of Moore*, 443 Pa. 477, 479, 277 A.2d 825, 826 (1971). With regard to a court's consideration of testamentary intent, we note:

> If a testator intends to make a testamentary gift, it can be done in many ways and in many forms, and the intent, as we have often said, is the polestar. Papers—holographic and otherwise—have been sustained as wills where a testamentary disposition of property was clearly contained in a letter or a deed or a certificate of deposit or a power of attorney or an agreement or a check or a note or an assignment, and even in a letter of instructions to an attorney where it was later proved that the writer intended such letter to be a will[.]

*In re Estate of Fick*, 418 Pa. 352, 355, 211 A.2d 425, 427 (1965) (citations omitted). Moreover, if a further or additional act or writing is contemplated by an alleged testator in order to make a written document his will or codicil, the writing is nontestamentary in nature. *In re Estate of Moore,* at 479, 277 A.2d at 826 (citation omitted).

¶ 16 Black's Law Dictionary defines the term "draft" as, *inter alia,* "[a]n initial or preliminary version." *See* Black's Law Dictionary, 8th edition, at 531. The obvious connotation of the term "draft" is that it is a contemplation of a further or additional act or writing. Appellants' arguments to the contrary are unavailing. The fact that the decedent did not strike out the word "Will" but included it on the cigarette carton in addition to "DRAFT ?" was not an indication of testamentary intent but rather an indication that the decedent contemplated a final document to be created at a later time. Appellants' contention that labeling a document a "Will" is determinative of the character of the writing itself is illogical, in that, if this were the case, then any writing labeled "Will" would be a valid will despite the lack of a positive disposition of assets or testamentary intent. Simply labeling a document "Will" does not end our inquiry into the validity of the document itself.

¶ 17 Second, Appellants' argue that the decedent did not strike out his signature or give any other indication that he was revoking his will written on the cigarette carton. This argument is misplaced under these circumstances because the issue to be determined is whether the cigarette carton was a valid will and not whether the decedent revoked a *prior* valid will.

¶ 18 Third, Appellants contend that the definition of "draft" as set forth in the dictionary does not encompass the term "DRAFT ?" as indicated on a will. This is an unreasonable limitation on the definition of "draft" because a dictionary does not include an exhaustive list of each context in which the word may be used in the

English language. Further, Black's Law Dictionary defines a "drafter" as "[a] person who draws or frames a legal document, *such as a will*, contract, or legislative bill." *See* Black's Law Dictionary, 8th edition, at 531 (emphasis added).

¶ 19 Fourth, Appellants' cite to *Scott's Estate*, 147 Pa. 89, 23 A. 212 (1892), for the proposition that even if the cigarette carton was intended to be used as a basis for reference for a final will prepared by decedent's attorney, this document should still be considered a will. In *Scott's Estate*, the ailing testator dictated a letter to his attorney that was transcribed by a friend, Mr. Stewart, who witnessed the signing of the document and testified to the fact that the testator intended this document to be his will. *Id.*, at 99, 23 A. at 213. Additionally, the testator expressed his intention that the letter constituted his final will to his son who entered the room after the letter had been transcribed by Mr. Stewart. *Id.*, at 99, 23 A. at 213. The testator informed both Mr. Stewart and his son that he did not want the letter delivered to his attorney but rather that he wanted it placed in his safe deposit vault until his death. *Id.*, at 99, 23 A. at 213. Further, the testator made statements to both Mr. Stewart and his son instructing them that if anything happened to him the letter was to be probated. *Id.*, at 99, 23 A. at 213. Finally, the testator expressed to Mr. Stewart and his son that the letter was as good as a will, and that it was "as good a one as [he] want[ed]." *Id.*, at 99, 23 A. at 213.

¶ 20 *Scott's Estate* is inapposite to the present circumstances in that the decedent had no witness to the creation of the cigarette carton, there was no evidence that he intended this to be his final will and, as noted above, the inclusion of the word "DRAFT ?" is strong evidence to the contrary. Further, the cigarette carton did not make a testamentary disposition of property whereas the letter in *Scott's Estate* set forth specific amounts of money that were to be given to each beneficiary and the letter provided for the appointment of executors of the will. Finally, the letter in *Scott's Estate* was witnessed, prepared, and signed by another individual whereas the cigarette carton contained none of these indications of testamentary intent.

¶ 21 Fifth, Appellants' argue that the signing and dating of the cigarette carton was conclusive as to the decedent's testamentary intent. We reiterate that there is no special form of words necessary to constitute a will, however, it must include one essential element, that is, the document must dispose of property *In re Estate of Hopkins*, 570 A.2d at 1059.

¶ 22 As noted above, the decedent's words do not constitute a plain and clear meaning by which this Court can decipher his intention. The fact that the cigarette carton itself is labeled a "Will" and that it was signed and dated by the decedent is of no consequence when the contents of the writing do not amount to a disposition of property. *In re Estate of Hopkins*, 570 A.2d at 1059.

¶ 23 Sixth, Appellants aver that if there was real doubt as to whether "DRAFT ?" destroyed testamentary intent, then extrinsic evidence should have been admitted to aid in this determination. As noted above, extrinsic evidence is only admissible when a writing by its terms clearly constitutes a testamentary disposition. *In re Mannarelli Estate*, 436 Pa. 141, 142, 259 A.2d 169, 170 (1969) (citation omitted). Extrinsic evidence is not admissible to prove testamentary intent because this writing did not constitute a testamentary disposition by decedent. *Id.*, at 142, 259 A.2d at 170.

¶ 24 Appellants' final argument regarding testamentary intent is that an exami-

nation of the cigarette carton showed the presence of testamentary intent with reasonable certainty, and, accordingly, the cigarette carton should have been probated as a will. In the alternative, Appellants' argue that if an ambiguity or real doubt exist, then extrinsic evidence should have been admissible to prove the uncertain character of the cigarette carton.

¶ 25 As discussed at length above, our examination results in the same determination as that of the orphans' court. *See* Orphans' court opinion, 4/12/07, at 6 (extrinsic evidence not admissible to prove testamentary intent in absence of positive disposition of assets). We find that the cigarette carton did not make a proper testamentary disposition, and, therefore, extrinsic evidence was not admissible to prove testamentary intent. *In re Mannarelli Estate*, at 142, 259 A.2d at 170. Additionally, because the cigarette carton was without testamentary intent, it was not a valid will. *In re Megary's Estate*, at 265, 55 A. at 965.

¶ 26 In conclusion, the cigarette carton was not a will because it lacked both a positive disposition of property and the testamentary intent of the decedent. *In re Estate of Hopkins*, 570 A.2d at 1059. Because we find no error of law or an abuse of discretion by the orphans' court, we affirm the February 12, 2007 grant of summary judgment in favor of the Four Heirs. *Arnoldy*, 927 A.2d at 262.

¶ 27 Judgment affirmed.